CASE 74—EQUITY—DECEMBER 13, 1883.

# Elliott v. Harris, &c.

### APPEAL FROM FLOYD CIRCUIT COURT.

A suit is instituted to recover the remainder of purchase money due upon land. The defense is that there is a defect of title, and, it so appearing to the court, a rescission was adjudged. The vendor afterwards discovered the necessary deed, and filed her petition for a new trial, averring that the deed-books and indexes had been so mutilated during the late war that it was impossible to find the deed without examining the deed-books leaf by leaf, and that all possible diligence had been used.

1. Held that appellant was not bound to do more than to search for the deed, in the usual way, by the aid of the indexes, and that of the clerk, whose duty it is to index the deed-books used by him in recording deeds.

2. Public authority should provide for indexing deed-books when indexes are lost or destroyed, and until this be done such books are not entitled to the conclusive force of public records as to notice.

W. LINDSAY AND K. F. PRICHARD FOR APPELLANT.

The averments of the petition for a new trial are that the record of deeds in Floyd county, and indexes thereto, were so mutilated, torn, and disfigured, that no reasonable amount of diligence could have discovered the deed which was necessary to make out the title. Without indexes no deed could be found by any reasonable diligence.

The court erred in dismissing the petition for a new trial. (Allen v. Perry, 6 Bush, 91; 7 B. Mon., 123; Repperdon v. Scott, 7 A. K. Mar., 152; Hayes v. Price, 4 Dana, 81; Denny v. Wickliffe, 1 Met., 224.)

JNO. & J. W. RODMAN and WEDDINGTON & GOBLE for APPEL-
LEES.

1. There is no averment giving any reason why Mrs. Smith did not, by
herself or her attorney, examine the records of the Floyd county
court. The war had been over for seven years, and therefore that
could not prevent a full examination.

2. Denny v. Wickliffe is not in point. In that case "the indexes to the
deeds had been destroyed." In this the averment is that there was no
"general index." The statute never required such an index. (3 Bush,
487; 6 Mon., 168; 1 Mar., 313; 6 Bush, 90; Hayes v. Price, 4 Dana,
81; Dickinson v. Trout, 8 Bush, 444; Allen v. Perry, 6 *Ib.*, 85.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Wm. M. Smith, at the time of his death, owned the land described in this controversy. His only children and heirs were James M. Smith, John W. Smith, and the appellant, Mrs. Susan J. Elliott.

On the 2d day of March, 1854, John W. Smith conveyed his interest in the land to his brother, James M. Smith, the deed reciting at its close these words: "I have, together with Jane Smith, my wife, hereto set my hand and seal;" but it was signed alone by him. It was recorded the day of its date, March 10th, 1856. James M. Smith, with the consent of appellant and her husband, sold the land to Burrell Vaughn for $1,000, payable in four years from date, with interest from that time, for which he executed his promissory note, and to whom James M. Smith executed a bond for title upon payment of the purchase price, and put him in immediate possession, which he held until his death. He left two children, Robert and Jane, who were his only heirs. Jane married Harris. They and their guardian together have been in possession ever since their father's death.

James M. Smith assigned the note to his mother, Mary M. Smith, and died without children, leaving the mother, the appellant, and the children of his deceased brother, J.

W. Smith, to-wit: John and James Speed Smith, his heirs at law. Burrell Vaughn's administrator paid at different times $1,100 on the note, the last payment being made October 29th, 1869.

On the 5th of October, 1872, Mrs. Mary M. Smith brought suit against Vaughn's administrator and heirs to recover the remainder of the note, the credits not paying the interest and principal, and to sell the land for its payment.

She tendered the defendants her own deed, the deed of appellant and her husband, not, however, tendering any deed from John and James Speed, children of John W. Smith, deceased.

The defendants resisted a recovery because of defect of title, which they alleged was in the infant children of John W. Smith, deceased, and sought a rescission on equitable principles.

John and James Speed Smith refused to join in a conveyance.

Mrs. Mary M. Smith died pending her suit on the note, having willed it and her other property to John M. Elliott and the appellant, or the survivor. The appellant survived him, and he also made her his sole devisee. Thus she became the owner and entitled to recover the proceeds of the note, unless John W. Smith's children have some interest in the land, or the widow of John W. Smith be living and entitled to dower in the land, and refuses, or can not be compelled to convey. There is no pretense in the record that the widow is living or claims any dower in the land. The infants, John and James Speed Smith, having arrived at maturity a few years ago, attempted to convey, but by oversight or design James Speed signed his name James M. Smith.

Finally it was conceded by both parties that Mrs. Elliott could not perfect the title, neither she nor the appellees knowing that John W. Smith had conveyed the land to his brother, James M. Smith, in 1854, and laboring under this misapprehension from want of actual notice of its existence, a rescission was decreed at the instance of both parties, and an account of rents and improvements ordered.  After the commissioner's report was erroneously confirmed, appellant for the first time, by accident, discovered the deed from John W. to James M. Smith, making good the title.  It appears that the deed was recorded in 1854, and that the records of the county are large, covering a period of eighty years ; that the appellant and her predecessors had not re-sided in the county since 1861 ; that during the war the deed-books and indexes thereto were so mutilated and torn that no reasonable amount of labor could have discovered the deed, and that every examination was made, except turning over the leaves one at a time, to find the deed, but without success.  The appellant filed her petition to vacate the judgment confirming the commissioner's report, and praying a new trial, in which she alleged the facts recited above, and that she and her predecessors were ignorant of the existence of the deed, and had used reasonable dili-gence, without success, to discover it as a link in the chain of title to the land.  A demurrer was filed and sustained to her petition as amended, and from the judgment dismissing her pleadings she has appealed, and the only question essen-tial to our present inquiry is, were the allegations of the petition as amended sufficient to exhibit legal diligence in search of evidence which would have produced, or, in all probability, have produced a different result from the judg-ment sought to be vacated?

No amount of diligence, in the eye of the law, could have discovered the deed, because the law does not require the appellant to do more than search for the deed, in the usual way, by aid of the indexes and aid of the clerk, whose duty it is to index the deed-books used by him in recording deeds. He was not bound to turn page by page to find a deed embraced by so cumbersome a record, and she had the right to be content after having made reasonable search and failed to find it. Public authority should provide for indexing the deed-books whose indexes are lost or destroyed, and until this be done, such books are not entitled to the legal force or validity of public records for the purposes of notice to all who may be effected by their contents. The demurrer should have been overruled, as it admits the truth of the facts alleged, and the appellees required to plead or subjected to confession.

To avoid future litigation, we suggest, if a new trial be granted and a rescission be denied, the measure of recovery is the note and interest until it became due, and no longer, as the appellant and her predecessors were in default in not making a good title from the time the note became due, and should not, therefore, receive interest during their neglect, failure, or inability to convey. Should a rescission be adjudged, the rent should be estimated at a sum equivalent to the interest of the purchase price.

Wherefore, the judgment is reversed and cause remanded, with directions to overrule the demurrer and for further proceedings consistent with this opinion.