WILLIAM A. DAVIDSON *vs.* EMILY L. SOHIER & another.

Suffolk. November 11, 12, 1914. — February 26, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Equitable Restrictions.*

If the language of a deed of land specifically states "that the house first erected on" the land shall be subject to a certain restriction, and, "This agreement and restriction to apply solely to the house first erected on said premises and not to any house subsequently erected thereon," the restriction in no way applies to any building or structure erected upon the land after the first house is built thereon, although such first house remains standing, there being no implied restriction that only one house or building shall stand on the land at the same time.

PETITION, filed in the Land Court on January 3, 1912, for the registration of land at the corner of St. Mary's Street and Beacon Street in Boston.

The respondents Emily L. and Mary D. Sohier objected to any decree permitting the erection of a building more than four feet deeper than the rear wall of their house, relying on the following restriction, contained in the deed of the trustees under the will of John W. Shapleigh to the petitioner's predecessor in title:

"That the house first erected on said parcel of land at the northeast corner of said Beacon Street and Saint Mary's Street shall not be more than four feet deeper from said Beacon Street than the rear wall of the house conveyed by said John W. Shapleigh to Mary D. Sohier and others by deed dated January 15, 1890, and recorded with Suffolk Deeds in Book 1917, Page 279, as said rear wall existed on said last mentioned date. This agreement and restriction to apply solely to the house first erected on said premises and not to any house subsequently erected thereon."

The case was heard by *Clark*, J. The material facts are stated in the opinion. The judge ruled "that upon the erection and finishing of the first house on the petitioner's lot said restriction was completely satisfied and fulfilled and is no longer in force," and ordered a decree accordingly. The respondents alleged exceptions, which, after the death of *Clark*, J., were allowed by *Corbett*, J.

*B. E. Eames*, for the respondents.

*H. H. Ham*, (*L. J. Dunn* with him,) for the petitioner.

RUGG, C. J. One Shapleigh in 1890 owned seven contiguous lots on the northerly side of Beacon Street. The one on the corner of St. Mary's Street was vacant. A block of four houses stood on the four lots next to the corner, which Shapleigh had erected, all having a similar depth from Beacon Street. In that year he sold the house and lot next but one to the corner to the respondents, delivering at the same time with the deed a letter signed by himself, in which he said:

"As one of the considerations of your purchase from me of the house on the northerly side of Beacon Street near Saint Mary's Street, I agree with you that the house first erected on my parcel

of land at the northeast corner of said Beacon Street and Saint Mary's Street shall not be more than four feet deeper from said Beacon Street, than the present rear wall of the house so purchased by you of me; and I further agree with you that if I should sell said parcel of land before I had so built thereon, that I will incorporate in my deed thereof a restriction substantially similar in form to the above agreement. This agreement and restriction to apply solely to the house first erected on my said premises and not to any house subsequently erected thereon."

The petitioner has become the owner of the corner lot through several mesne conveyances. The deed from Shapleigh, under which he holds title, contained a restriction in substance the same as that set out in the letter of 1890 to the respondents just quoted. In 1911 the petitioner built a house on his lot which conformed to the terms of the deed. He now proposes, without tearing down that house, to erect another building on the lot which will partly cover that portion of the lot more than four feet deeper from Beacon Street than the rear wall of the respondents' house. The question is whether the respondents can prevent him from executing this purpose.

If it be assumed in favor of the respondents (but without so deciding) that they have a right to enforce the restriction in the petitioner's deed, that restriction, rightly construed, does not prohibit the erection of the proposed building. The words used in the instrument creating the restriction must define in terms its scope. While they must be read in the light of the subject matter to which they refer and must be interpreted in a way, consistent with their true meaning, to effectuate what may be presumed to have been the reasonable purpose of the parties, yet they cannot be stretched beyond their fair import to accomplish what it may be thought the parties would have desired had the situation, which now has developed, been foreseen by them at the time when the restriction was written. *Boston Baptist Social Union* v. *Boston University*, 183 Mass. 202.

The words of the Shapleigh letter and deed are restricted by definite and unequivocal phrase to "the house first erected" on the petitioner's lot. Any subsequent building is excluded expressly from its operation. There is no word to indicate a purpose that only one house or building shall be built on the lot at

the same time. That would have been a thought easy to state in a simple way if it had been in the minds of the parties. It may have been that this was intended to be left to the selfish interest, æsthetic taste or neighborly instincts of the owner of the corner lot. This suggestion gains some support from the fact that for more than twenty years since the purchase by the respondents there has been no occasion for complaint, for the corner lot has been unoccupied. But whatever may have been the cause of the use of the words employed, their plain meaning does not permit an enlargement of their force and effect so as to include any second building to be erected on the lot, whether while the first is standing or after it is destroyed. When the words are made to apply so pointedly to the first house alone, it would not be interpretation of a written instrument, but rather speculation as to an undisclosed design, to extend the restriction to a second building even though it be in addition to and not in substitution for the first house. *Hubbell* v. *Warren*, 8 Allen, 173. *Smith* v. *Bradley*, 154 Mass. 227. *Peck* v. *Hartshorn*, 189 Mass. 110. *Noyes* v. *Cushing*, 209 Mass. 123.

*Exceptions overruled.*