ANNA MAUDE WILLIAMS, Respondent, v. HUGH
J. CARR, Appellant.

In the Kansas City Court of Appeals, March 5, 1923.

1. **COVENANTS: Deeds: Restrictions: Construction: Restrictions in Conveyances as to Use of Real Property Strictly Construed.** The law favors the free and untrammelled use of real property, and as restrictions in conveyances of the fee are regarded unfavorably, they are therefore strictly construed.

2. **———: ———: ———: ———: Where Intention to Create Building Restrictions is Doubtful, Ambiguity Resolved against Restrictons.** In view of the law favoring the untrammelled use of property where the intention to create building restrictions is doubtful, the ambiguity will be resolved against the restrictions.

3. **———: ———: ———: ———: The Words 'Stable or Barn' in Building Restrictions, Held Broad Enough to Include the Erection of a Garage.** A deed containing a building restriction that no "stable, barn or other out buildings shall be erected on said lots elsewhere than on the rear thereof," *held* that the words 'stable or barn' are broad enough to include erection of a garage as those words were commonly used and understood at time restrictions were made, the word barn, though it can be said to mean the same as stable, means something more than merely a place where domestic animals are kept and may be construed to include a place where vehicles such as automobiles are stored.

Appeal from the Circuit Court of Jackson County.—
*Hon. Allen C. Southern*, Judge.

AFFIRMED.

*Warner, Dean, Langworthy, Thomson & Borders* and *Albert E. Stoll* for respondent.

*James W. Broaddus* for appellant.

BLAND, J.—This is an action to enjoin defendant from erecting a garage on his premises in Kansas City, Missouri. From a decree making permanent the injunction, defendant has appealed.

The facts show that on December 6, 1906, the Abington Land Company caused a tract of land owned by it in Kansas City to be platted and laid out in lots and streets to be known as Abington Park. Lots 63, 64, 65 and 66 were eighty feet in width and 135 feet in depth and faced toward the west on Spruce Street. Lot 63 was a corner lot and sided 135 feet on Anderson Avenue and lay south of the same. Instead of houses being built facing toward the west upon lots 63 and 64, these lots were divided into three tracts of ground with a house built on each tract facing Anderson Avenue. Defendants owns the west fifty feet of lots 63 and 64 which gives him a tract of land on the southeast corner of Anderson and Spruce Avenues upon which he has a residence standing facing the north. Plaintiff owns lots 65 and 66 with a residence on lot 66 facing west. This action is to enjoin defendant from building a garage, for which he had built the foundation, at the southeast corner of his land one and one-half feet from the south line of his property and one foot from the east line thereof. The front of the garage was to be thirty-one feet from the sidewalk line and forty feet from the street line of Spruce Avenue, or much nearer to the front line of lot 64 than the rear line thereof. Plaintiff proposes to build a house on lot 65 in the usual place facing west and if the garage is built it will be within four feet of the house and the front of the garage will be on a line with the front door of the house.

The property that defendant now owns was purchased from one McEwen on June 29, 1920, who obtained the property from the Abington Land Company on July 6, 1908. A deed from the Abington Land Company to McEwen provided for the following restrictions: That the lots should be used for residence purposes only; that no residence or dwelling house with appurtenances thereto should be erected on said lots costing less than $3,000; that the front building line of any residence exclusive of porches should not be nearer than thirty feet

from the front street line of the lots and "No stable, barn or other outbuildings shall be erected on said lots elsewhere than on the rear thereof;" that the premises should not be transferred or leased to any colored person. The restrictions were to continue in force for twenty years from January 1, 1906. Plaintiff purchased her lots from the Abington Company on May 1, 1914, and the deed to her conveying said lots contained similar restrictions to those contained in the deed to McEwen.

The decision in this case turns mainly upon the proper construction of the words in the restrictions "stable, barn or other outbuildings" and whether such terms are broad enough to include garage. Certain rules of construction are cited by the parties. It is held that the "law favors the free and untrammelled use of real property. Restrictions in conveyances of the fee are regarded unfavorably and are therefore strictly construed." [Scharer v. Pantler, 127 Mo. App. 433, 437.]

"But, of course, the rule of construction thus stated is subject to that which obtains with respect to all contracts requiring the courts to give effect to the plain intention of the parties as gleaned from the language employed in the covenant when viewed in the light of the entire context of the instrument." [Kitchen v. Hawley, 150 Mo. App. 497, 503.] In view of the law favoring the untrammelled use of property where the intention to create building restrictions is doubtful, the ambiguity will be resolved against the restrictions. [Whittaker v. Realty & Investment Co., 197 Mo. App. 377; Conrad v. Boogher, 201 Mo. App. 644.] It is stated in Land Company v. Investment Company, 169 Mo. App. 715, 722—

"Although restrictions on the fee are not favored, yet when the intention of the parties is clear, court will enforce them. [Hutchinson v. Ulrich, 145 Ill., 336; Kitchen v. Hawley, 150 Mo. App. 497.] The intention of the parties must be determined from the language of the covenant itself considered in connection with the sur-

rounding circumstances at the time the covenant was made (Ibid.); or, as it is sometimes said, from the language of the covenant itself considered in the light of the entire context of the instrument containing it. [Kitchen v. Hawley, 150 Mo. App. 497.] Such covenants must be considered with reference to the situation of the property affected and its present and prospective use as well as to the language employed in expressing the covenant. [St. Louis Deposit Bank v. Kenney, 101 Mo. App. 370, l. c. 388.]''

The rules of construction applicable to restrictions of this kind are similarly stated and numerous authorities cited in the case of Reed v. Hazard, 187 Mo. App. 547, 550.

Defendant invokes the rule of *ejusdem generis* and contends that the words ''other outbuildings'' used in the restrictions are to be construed with reference to the words that precede them and while the word ''outbuildings'' is broad enough to include garage, the former word being a general word following specific ones is deemed to mean things of the same kind and character and cannot include things wholly different from those first mentioned; that the words ''stable'' and ''barn'' used in the restrictions are not broad enough to include a garage especially considering the time the restrictions were written; that the restrictions mean out-buildings of the character of the barns and stables in use in the year 1906 when the restrictions were first placed upon the lots in this addition.

It is apparent from a reading of all of the restrictions that they were made for the purpose of creating and maintaining a first-class residence district and that it was not the character of the outbuildings that was in mind but the location of them on the rear of the lots, as then platted, so that they would not be in proximity to the living quarters of lot owners. We think that the words ''stable or barn'' are broad enough to include a garage as those words were commonly used and under-

stood at the time the restrictions were made. Defendant cites the case Riverbank Improvement Co. v. Bancroft, 209 Mass. 217, in support of its contention that these words were not broad enough on December 6, 1906, to include a garage. The word stable in the restrictions in that case was inserted on August 11, 1899. In that case it is said at l. c. 222, 223,

"At the time these restrictions were put on, the garage was not the kind of building usually appurtenant to a dwelling house."

However, we cannot say that this is true of restrictions made on December 6, 1906. It has been held that the word barn in this country is used interchangeably with the word stable. [Saylor v. Commonwealth, 57 S. W. 614 (Ky.)]. In the case of Riverbank Improvement Co. v. Bancroft, supra, l. c. 222, it is said:

". . . in the Standard Dictionary, editions of 1895 and 1908, a stable is defined as a building often used for putting up vehicles, and that in the Century and Standard Dictionaries a garage is defined as 'a stable for motor-cars' and, 'a building, as a stable or shed, for the storing of automobiles and other horseless vehicles.' "

The Standard and Webster Dictionaries define the word barn as follows: "A storehouse for farm-produce as grain, hay, etc; also (U. S.), a stable or any simple shelter for horses, cattle, etc. . . . place for storing."

Webster defines the word stable as—"A building or part of a building set apart for lodging and feeding horses or cattle, especially one fitted with stalls, fastenings, etc., also often for storing hay or putting up vehicles; sometimes specifically carriage-stable, cow-stable, etc."

It is apparent that the word barn even though it can be said to mean the same as stable, means something more than merely a place where domestic animals are kept and is broad enough to include a place where ve-

hicles such as automobiles are stored. We think there is no question but that the restrictions in this case were broad enough to prohibit the erection of the garage at the place selected by the defendant. [Ringgold v. Denhardt, 110 Atl. 321 (Md.).]

The judgment is affirmed. All concur.