## Seat, et al. v. Louisville and Jefferson County Land Company.

(Decided March 8, 1927.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Dedication.—Where city planning commission, authorized by Acts 1922, c. 99, was never created, powers vested in board of public works to approve plats under Ky. Stats., section 2826, were never divested, and repeal of Acts 1922, c. 99, did not affect powers of board under Ky. Stats., section 2826.

2. Dedication.—Under Ky. Stats., section 2826, authorizing recording of plats after approval, anything that may properly be put upon a plat may be recorded, including building restrictions.

3. Dedication.—Restrictions written on face of plat, dedicating street in accordance with Ky. Stats., section 2826, became part of plat and were recordable with it.

4. Records.—All sections of statute relating to recording of deeds, mortgages, and other instruments affecting title to real estate must be read and considered together.

5. Vendor and Purchaser.—When instrument conveying title to real estate or any interest therein or any easement which places restriction or burden on real estate is recorded, it is notice to the world, and every one thereafter purchasing property, title to which is affected by instrument, is bound by provisions thereof.

6. Vendor and purchaser.—Where plat dedicating street and containing building restrictions was properly recorded in accordance with Ky. Stats., sections 490, 494, 495, 496, 511, failure of clerk to index instrument in accordance with section 513 does not affect validity of constructive notice given by placing such instrument on record, since when instrument is recorded there is constructive notice regardless of whether clerk has plat properly indexed.

7. Covenants.—Language of plat dedicating street and authorizing frontage to be used for dwelling house sites held to exclude its use for any other purpose such as a garage, since "dwelling house site" must be construed to mean location for dwelling house.

8. Covenants.—In determining meaning of language used in instrument restricting use of frontage on street dedicated to public, common intent of parties thereto must govern, and circumstances surrounding making of contract or execution of paper may be considered.

9. Corporations.—President of real estate corporation held to have had authority to bind company by signing and acknowledging instrument dedicating street and containing building restrictions on adjoining property.

10. Corporations.—Where realty company, after execution of plat dedicating public street by its president, thereafter participating in construction of street after plat had been placed on record, it will be held to have ratified act of president whether or not he had authority to sign instrument.

DAVID R. CASTLEMAN, HENRY J. TILFORD and O'NEAL & O'NEAL for appellants.

WILLIAM W. THUM and MATT. O'DOHERTY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This suit grows out of the dedication of a street or public way by the appellee, Louisville and Jefferson County Land Company, and the appellant, Consolidated Realty Company. The street or public highway dedicated by these two companies is known as Emerson ave-

nue and divides the subdivision belonging to the Consolidated Realty Company on the northern side of Emerson avenue known as Strathmoor from a subdivision lying on the southern side of Emerson avenue belonging to the Louisville and Jefferson Land Company known as Villula Park. The main thoroughfare in the Strathmoor subdivision is Strathmoor boulevard, and the lots in that subdivision when laid out fronted on Strathmoor boulevard and extended back a distance of from 210 to 220 feet to what is now Emerson avenue. The appellee was much interested in opening Emerson avenue so that the lots in Villula Park might front on that avenue and this desire on the part of appellee led it to enter into negotiations with the Consolidated Realty Company looking towards the dedication of Emerson avenue. The appellee was to furnish nearly all of the ground constituting Emerson avenue, but the Consolidated Realty Company was to furnish a small triangle of land about 225 feet in length, with an extreme width of 12 feet, to straighten out the northern frontage of Emerson avenue. The agreement and plat hereinafter referred to provided for the furnishing of the ground for Emerson avenue as above indicated.

On July 8, 1924, the two land companies above mentioned, with all other owners of lots fronting on Emerson avenue at that time, entered into a dedication of said avenue and filed the plat and plan in accordance with the provisions of Ky. Stats., section 2826. The plat and plan were approved by the board of public works of the city of Louisville, by the city engineer, by the county judge and all other proper authorities, and were thereafter on July 18, 1924, recorded in the office of the clerk of the Jefferson county court in a book kept for that purpose. This dedication was signed and acknowledged by the lot owners fronting on Emerson avenue and was signed by the Louisville and Jefferson County Land Company by its president, Frank Simon, and was signed by the Consolidated Realty Company by its president, C. C. Hieatt. The dedication was acknowledged by both of these companies.

The plat and plan showed Emerson avenue inclosed by red lines as well as the general location of the Strathmoor subdivision and the Villula Park subdivision.

There was written on this plat above the signature of those signing, the following words of dedication:

"Louisville, Ky.; 1923.

"We, the undersigned property owners, hereby dedicate the above described 50 foot roadway as enclosed in red lines, to be a public thoroughfare, said roadway being an extension of Emerson avenue, in and adjoining Strathmoor subdivision No. 2. We agree that the frontage on said Emerson avenue shall be used for dwelling house sites. Lot owners whose property binds on this road are permitted to erect a dwelling thereon facing this avenue."

After this dedication the appellee proceeded to improve Emerson avenue thus dedicated at a cost of about $9,000.00. The Consolidated Realty Company contributed about $500.00, in addition to the ground which it surrendered towards the improvement of Emerson avenue.

On the 25th day of April, 1925, the Consolidated Realty Company conveyed two lots in its subdivision to the appellant, Alta M. Seat. These lots fronted on Strathmoor boulevard and also had a frontage on Emerson avenue; that is, they extended from Strathmoor boulevard to Emerson avenue a distance at that point of between 210 and 220 feet. The deed so executed to the appellant, Seat, contained a provision that all outbuildings on the lots so sold should be erected on the rear of the lot and that outbuildings should not be erected until after a residence had been erected or at the same time as the erection of a residence. The appellant, Seat, erected two houses fronting on Strathmoor boulevard located on her two lots and then began the erection of a garage on the frontage of Emerson avenue. The appellee claimed that the erection of the garage on the frontage of Emerson avenue was a violation of the restrictions contained in the dedication relating to the frontage of Emerson avenue. The appellee had already erected a house at a cost of about $9,000.00 on the other side of Emerson avenue opposite the location of the garage.

The appellee instituted this suit seeking an injunction to prevent the appellant, Seat, from erecting the garage. A temporary injunction was granted and a motion to dissolve it was made before Judge Dietzman

of this court, who, after considering the motion in consultation with Judges Thomas, Clay and McCandless, overruled it. The case was then prepared on its merits and the chancellor made the temporary injunction perpetual, and this appeal is a result of that judgment.

The appellee contends in this action that the restrictions in the dedication are valid and that to allow the erection of outhouses and garages on the north front of Emerson avenue would diminish the value of its property very materially and would tend to destroy the sale of the lots in Villula Park. It is well established by the evidence that this would be the result if outhouses and garages should be erected on the north frontage of Emerson avenue. If the restrictions in the dedication are valid, and if the subsequent purchasers of lots having a north frontage on Emerson avenue are bound by the restrictions, and if the restrictions by their terms prevent the erection of outhouses and garages on the north frontage of Emerson avenue, the matter was one where the chancellor was well within his powers in granting injunctive relief.

The first question which we will consider is whether the plat and plan signed and acknowledged by those owning lots fronting on both sides of Emerson avenue is a recordable instrument, and if recordable whether the dedication written thereon and signed and acknowledged was also recordable. Judge Dietzman, in his opinion overruling motion to dissolve the temporary injunction, which opinion was concurred in by Judges Thomas, Clay and McCandless, said:

"Second. Kentucky Statutes, section 2826, was not repealed by the City Planning Act, chapter 99 of the Acts of 1922. The latter act gave permission to any city of the first class to create a city planning commission by ordinance. When so created, the powers vested in the board of public works by section 2826 to approve plats would then be transferred to the planning commission, but until the planning commission was created the powers still remained in the board of public works. The Statutes, section 2775, require us to take judicial notice of the ordinances of the city of Louisville, and we therefore judicially know that no city planning commission has ever been created by the city of Louis-

ville. Therefore, the powers vested in the board of public works under section 2826 were never divested from said board, and hence the repeal in 1924 of the city planning act did not affect the powers of the board of public works under section 2826.

"Third. Kentucky Statutes, section 2826, authorizes the recording of plats when approved by the board of public works and the county judge. It is the opinion of the court that this statute is broad enough to authorize the recording of all things that may be properly put upon a plat, and this includes, at least where the plat is a plat of a subdivision, building restrictions. Loomis v. Collins, 272 Ill. 221, 111 N. E. 999.''

The opinion of Judge Dietzman on motion to dissolve the temporary injunction is not binding on this court and is not authority in this case, but we now approve and indorse the law as stated by him in the quotation above.

Section 2826, Ky. Stats., has been a law for many years. It provides in detail how a person may proceed to offer a public way for dedication, by a recorded plat when such public way is outside the limits of the city but within three miles thereof. Not only does this section provide for the dedication of a public way but also for the dedication of other easements. When the parties to the plat dedicating Emerson avenue entered upon the plat the restrictions written in the face of it, these restrictions became a part of the plat and were recordable with the plat. Section 2826 was fully complied with and Emerson avenue was properly dedicated as a public way, together with the restrictions written on the face of the plat and made a part thereof. When this plat and the restrictions indorsed thereon were recorded in the clerk's office certain interests in the lots in the Strathmoor subdivision fronting on Emerson avenue passed out of the Consolidated Realty Company and vested in the owners of the abutting lots fronting on the portion of the street so dedicated, and these restrictions were attached to and became a burden upon the lots fronting on Emerson avenue thus dedicated. The dedication was not only for the use and benefit of the public but was for the benefit of the owners of the Strathmoor subdivision to the north and the Vallula Park subdivision to the south. When the

plat was properly recorded the owners of the lots fronting on Emerson avenue on the north lost any right to erect outbuildings or garages on the frontage on Emerson avenue, as did the owners of the lots fronting on the south. That is, if the restrictions found in the plat prevent the erection of anything other than a dwelling on the frontage on the north side of Emerson avenue or on the south side of Emerson avenue then nothing but a dwelling can be erected on such frontage.

Section 495, Ky. Stats., provides as follows:

"All deeds and mortgages and other instruments of writing which are required by law to be recorded to be effectual against purchasers without notice, or creditors, shall be recorded in the clerk's office of the court of the county in which the property conveyed, or the greater part thereof, shall be."

Section 494, Ky. Stats., provides that no deed conveying any title to or other interest in land having a longer time to run than five years shall be good against a purchaser for a valuable consideration not having had notice thereof, or any creditor, unless the same be acknowledged by the party who shall execute the same, and lodged in the proper office for record. Section 496, Ky. Stats., contains substantially the same provision as to deeds, deeds of trust and mortgages.

Section 490, Ky. Stats., provides that the owner may convey any interest in lands not in the adverse possession of another, but no estate of inheritance or freehold or for a term of more than one year shall be conveyed unless by deed or will. It would seem that under the provisions of section 490, the restrictions on the plat under consideration might be treated as a deed conveying an interest in lots. Section 511, Ky. Stats., makes it the duty of the clerk of each county court to record all instruments of writing embraced in any section of the chapter relating to conveyances. Section 513, Ky. Stats., is in part as follows:

"The clerk of each county court shall make and keep an alphabetical cross index of all conveyances heretofore or hereafter recorded in his office, and he shall, when a mortgage or deed of trust, or any other conveyance, lease or contract is lodged in his

office for record, at once, and before attending to any other business, place the names of the parties to the same upon the cross index in his office, and shall, within six days thereafter, record the same.''

All of the sections of the statute relating to the recording of deeds, mortgages and other instruments affecting the title to real estate must be read and considered together. It is clear that it has been the deliberate purpose of the General Assembly to require the recording of any instrument which affects in any way the title to real estate, and it further appears that an innocent purchaser of real estate, the title to which may be affected by any written instrument, will not be prejudiced or affected by the provisions of any such instrument unless it has been recorded as required by law, unless he has actual notice of its contents. The recording of any instrument which conveys title to real estate or any interest therein or any easement therein or which places a restriction or burden upon any real estate is of the utmost importance, and when such instrument is recorded it is notice to the world, and everyone thereafter purchasing property, the title to which is affected by the instrument, is bound by the provisions of the instrument. It is, therefore, of the utmost importance that the clerk of the county court in the respective counties comply with the provisions of section 513, Ky. Stats., as to the indexing of all such instruments which in any manner affect the title to real estate. Such instruments should be indexed in the name or names of the parties executing them, and it is only by, and through, a proper indexing of such instruments that the title examiner may intelligently make up his abstract or give advice concerning the title.

It appears that the plat and plan under consideration in this case was properly recorded, but there was no proper index, and it is contended by the appellants that Mrs. Seat, the purchaser, is not bound by the provisions of said plat and plan and the restrictions thereon written, because she had no knowledge of the instrument. The failure of the clerk to index such an instrument does not affect the validity of the constructive notice which is given by placing such an instrument on record. In the case of Herndon. v. Ogg, 27 K. L. R. 268, 84 S. W. 754, in construing the sections of the statute declaring that

the recording of instruments shall be notice to all parties, the court said:

> "We are of the opinion that after the grantee has done all that the law requires he should not be held accountable and made to suffer for the mistake, carelessness or fraud of the clerk. It appears from section 513 of the statutes that the clerk of the county court is required to make and keep an alphabetical cross index of all conveyances. It is not intimated in the statutes that the grantees in conveyances are required to see that the clerk performs this statutory duty. They have the right to presume, upon withdrawing their conveyances, that he has performed it."

In the case of Smith v. Chapman, 153 Ky. 70, the court again had before it the proper construction of section 513, Ky. Stats. The court there said:

> "Since the law imposed upon the clerk the duty of properly indexing all deeds in his office, appellant had a right to presume that no deed from Goosling to Williamson had been lodged for record in that office. Appellant alleges that he made such search himself; not only so, but he employed a reputable firm of attorneys to search for him, and that they likewise failed to find the index of the deed from Goosling to Williamson where it should be and reported to him that no such deed was of record."

The court then quotes from the case of Title Guaranty & Trust Co. v. Commonwealth, 141 Ky. 570, as follows:

> "It was the clerk's duty to index the mortgage properly on the cross index. The fact that the mortgage in question was indexed and recorded in one of the individual mortgage books was not a compliance with the law. It was not incumbent upon appellee or his attorneys to examine each mortgage book or the index thereof for the purpose of discovering the mortgage in question. They had the right to rely on the cross index required by the statute to be kept."

The court quoted from the case of Elliott v. Harris, 81 Ky. 470, as follows:

"No amount of diligence, in the eye of the law, could have discovered this deed, because the law does not require the appellant to do more than search for the deed, in the usual way, by aid of the indexes and aid of the clerk, whose duty it is to index the deed book used by him in recording deeds. He was not bound to turn page by page to find a deed embraced by so cumbersome a record, and she had the right to be content after having made reasonable search and failed to find it. Public authority should provide for indexing the deed books whose indexes are lost or destroyed, and until this be done, such books are not entitled to the legal force or validity of public records for the purposes of notice to all who may be affected by their contents."

The court, in concluding its opinion, said:

"An index which does not show the name of the grantor in the conveyance to the grantee, and the name of the grantee from the grantor, in their proper place, that is, under the initial letter of the grantor's and grantee's surname, is not such index as the law contemplates or requires."

In the case of Great Western Petroleum Corporation v. Samson, et al., 192 Ky. 814, the court again construed the provisions of section 513, Ky. Stats., and there said:

"The duty of indexing deeds, leases, and other instruments conveying an interest in land is imposed by section 513 of the statutes upon the county court clerk in whose office the record of such instruments is kept, and there is no duty anywhere imposed upon the purchaser or conveyee in such instruments to see that the index is made by the clerk. When a recordable instrument is lodged for record with the clerk and the fees paid, the one to whom it is made has performed all the duty required of him by law, and his rights under the instrument can not be affected by a subsequent purchaser or lien holder, because of any failure on the part of the clerk to properly index his muniment of title; especially so after the instrument was recorded in a book properly

provided for the purpose. This court so held in the case of Webb v. Austin, 22 Ky. L. R. 764, and cases in point are Smith v. Chapman, 153 Ky. 70, and others therein referred to.''

In the case of Kentucky River Coal Corporation v. Sumner, 195 Ky. 119, the court again holds that the failure of the clerk to properly index a recorded instrument cannot be charged against the one having it placed on record. In that connection the court said:

"His failure to keep the required index is an act of nonfeasance for which he may be made liable to any one who may be damaged thereby, but the consequences of his dereliction will not be visited upon the one who has paid him the necessary fees for recording the instrument." (Cited cases.)

The case of Smith v. Chapman, *supra,* which is cited in the two last cases above quoted from, appears not to support the cases of Herndon v. Ogg, Great Western Petroleum Corporation v. Samson and Kentucky River Coal Corporation v. Sumner. It was a case, however, where a petition had been filed for a new trial under the provisions of section 344, Civil Code. The plaintiff seeking the new trial had made an examination of the records and failed to find a deed constituting a link in the chain of his title. He thereafter discovered the deed on record but not properly indexed, and to show that he had not been negligent in his effort to produce that particular deed at the former trial, he showed that he had made a careful investigation and did not find the deed because it was not properly indexed. The question of whether the failure of the clerk to properly index an instrument deprived that instrument of its function to give notice to all persons of its contents was not involved in the case of Smith v. Chapman, and for that reason it is not authority one way or the other on the question involved here. The case of Cox v. Prewit, 16 K. L. R. 130, is of the same nature as the case of Smith v. Chapman. Cox relied upon a record of a certain survey kept in one of the books in the surveyor's office, but upon the investigation of the index he failed to locate the survey, and because of the lack of the survey at his trial he lost his case. Later he filed a petition for a new trial, and the court held that he had not been negligent because of his failure to find the

survey at the first trial.   The case of Title Guaranty &
Trust Co. v. Comlth, *supra,* was a suit to recover from
the county clerk by reason of his failure to index a mort-
gage.   He had improperly indexed a mortgage and by
reason thereof at a later date another party accepted a
mortgage on the same property, believing there was no
mortgage against it.   The party holding the prior mort-
gage having the superior lien on the property first col-
lected on the mortgage and there was not enough to pay
the party accepting the last mortgage.   He sued the clerk
for the difference and recovered.   The case of Bentley
v. Letcher County, 143 Ky. 585, which is cited in the case
of Smith v. Chapman, has nothing to do with the question
under consideration.   That case simply holds that it is
the duty of the county court clerk to keep a general index.
The case of Elliott v. Harris, *supra,* is another case where
a new trial was sought on the grounds that a deed had
been discovered which had been overlooked at the first
trial because it was improperly indexed.

Where the clerk records an instrument which is re-
cordable in his office it is notice to all parties as provided
by law, and this notice exists regardless of whether the
clerk has properly indexed the instrument.   If the clerk
has failed to perform his duty that is a matter between
him and anyone who may be damaged by reason of his
failure.   It follows that the appellant, Mrs. Seat, cannot
rely upon her ground that she was an innocent purchaser
of the lots, as she was compelled to take notice of the
plat and plan and the restrictions contained thereon
which were of record in the office of the county court clerk
of Jefferson county when she purchased her lots.

As we have held that the restrictions found written
in the face of the plat which was recorded were properly
included as a part of the recorded instrument, it is not
necessary to go into the question raised by appellants
whether the inclusion in a recordable instrument of mat-
ters which should not be included therein, carries notice
to subsequent purchasers of the property affected by such
instrument.   The authorities cited and relied upon by
appellants on this point have no place in this case.   The
restrictions contained on the plat which was recorded
were not improperly included as a part of the plat.

It is insisted with much plausibility supported by
forceful argument that the language itself made a part

of the plat containing the restrictions does not prevent appellant erecting a garage on her lots on the Emerson avenue frontage. The language is not ambiguous and it must be taken according to its ordinary meaning. It is:

> "We agree that the frontage on said Emerson avenue shall be used for dwelling house sites."

If the frontage on Emerson avenue was to be used for dwelling house sites that of itself excludes its use for any other purpose. A dwelling house site must be construed to mean a location for a dwelling house, and we do not believe that any other construction can be placed on this language without departing from the ordinary rules of construction. This construction is admitted by counsel for appellants, but they undertake to convincingly argue that things other than a dwelling house may be erected on a dwelling house site. They insist that a dwelling house site is a boundary or parcel of land occupied by a dwelling house and the customary outbuildings which make it convenient and suitable for residential purposes. If that definition should be accepted as correct still it cannot be well said that a garage might be built on a dwelling house site within such a boundary or parcel of land without any dwelling house on it. The dwelling house of the appellant, Mrs. Seat, is on the other end of the lot, that is, fronting on Strathmoor boulevard. To allow her to erect a garage fronting on Emerson avenue when there is no dwelling house on her lot fronting on Emerson avenue is the very thing which the restrictions on the plat sought to prevent. Whether she could erect a garage fronting on Emerson avenue on the same lot with a dwelling house is a question not before us and therefore not decided. At common law, it is true, a dwelling house included the premises actually used as such and such outbuildings as were within the curtilage or courtyard surrounding the mansion house. Mrs. Seat has no mansion house fronting on Emerson avenue, therefore the common law definition of a dwelling house has no application. The purpose of the dedication of Emerson avenue was to enhance the value of the subdivision on each side thereof, and the limiting of the frontage to the erection of dwelling houses was in furtherance of the intention of the dedication, and to allow the erection of barns, stables and garages and such other outbuildings

on the frontage of Emerson avenue would be a violation of the restrictions contained in the dedication. In determining the meaning of language used in such instruments the language must be understood as to the common intent of the parties and the intention of the parties must govern. The circumstances surrounding the making of the contract or the execution of the paper may be looked to and considered to aid in the proper construction of the instrument. Atkins v. Atkins' Admr., 203 Ky. 291; Siler v. White Star Coal Company, 190 Ky. 7; Mogg v. Farley, 205 Ky. 25.

There is some claim that Hieatt, the president of the Consolidated Realty Company, did not have authority to sign the dedication, and a further claim that his company is not bound thereby because a fraud was practiced on him in obtaining his signature, in that he supposed he was signing something else when he signed the plat with the restrictions in it. The proof in the case does not show any fraud, and neither is there any proof of mutual mistake. After Emerson avenue was dedicated the Consolidated Realty Company appears to have paid some part of the cost of construction. It must have known of the dedication and the restriction within a short time after the plat was signed by the president as the plat with restrictions was placed on record a short while thereafter. Our attention is called to no particular case holding that the president of a real estate corporation may not sign such a contract. It is the business of such a corporation to execute contracts, deeds and other instruments of writing relating to the sale of real estate. It seem to us that the president of such a company has the same right to bind it by the signing and acknowledging of a contract like this as a cashier of a bank would have to bind his bank by entering into a contract relating to its business; but, be that as it may, there is evidence that the Consolidated Realty Company took part in the improvement of Emerson avenue and knew what was going on, and while it may be true that it did not know the specific terms of the restrictions on the plat at the time it executed the deed to Mrs. Seat, yet it should have known, as the plat had been on record a sufficient length of time for it to become thoroughly familiar with its provisions. We do not think the contention made that the company is not bound by the acts of its president in signing the plat

has any merit, or, if there should be any merit found in that contention, that is, that he had no authority to sign, it may be held that the company thereafter ratified his acts, and it is, therefore, bound by what he did. It is, therefore, unnecessary to determine whether the evidence of Mr. Hieatt is competent as to Mrs. Seat. We find no other points discussed in the brief for appellants. We find no error in the judgment of the lower court.

Judgment is affirmed. Whole court sitting.