## Holliday v. Sphar.

(Decided Dec. 20, 1935.)

**46**

MARCUS REDWINE and J. SMITH HAYS for appellant.

FRANKLIN W. STEVENSON, J. M. STEVENSON and D. L. PENDLETON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

A. H. Hampton, on October 22, 1919, conveyed to W. F. Randolph 45 acres of land on the west side of Boone avenue fronting South Belmont street, in Winchester, Clark county, Ky. It was a part of Hampton's farm. Its four boundary lines are of unequal length and angles. About one-third of it was within the city limits. It was conveyed "as an addition to the city" and later called Hampton's Court. The recited consideration for the tract was $45,000 cash, "and the further consideration of the agreements and covenants" set out in the deed to "run with the land." The covenants of the deed required streets of certain widths to be layed off and dedicated for street purposes, and that

> "No dwelling house shall be built in any part of said addition, when laid off into streets, lots and alleys, closer than 25 feet to the pavement-line, and no residence shall be built on Boone avenue or Belmont street, which is now known as the Colbyville Pike, costing less than thirty-five hundred ($3,500.00) dollars, and not part of the property herein sold shall ever be sold or leased to any person of African descent." "No dwelling house shall be built on the new street next to the orchard at any point closer than four hundred (400) feet to Boone avenue which costs less than thirty-five hundred ($3,500.00) dollars."

Hampton owned a gas line on and under the land. He reserved it, with certain rights respecting it.

On October 29, 1919, Randolph subdivided the 45 acres into lots, each with 25 feet front. On a plat of the subdivision he wrote, signed, and acknowledged, and caused to be recorded in the county clerk's office of Clark county the office in which Hampton's deed to him was recorded, this statement:

"No dwelling house shall be built in any part of said addition, when laid off into streets, lots and alleys closer than twenty-five (25) feet to the pavement line."

On the plat a red line is drawn 25 feet from the front of each lot, indicating the 25 feet referred to in the statement indorsed on the plat.

The corporate limits of the city of Winchester at that time was in the form of a circle, 1 mile in diameter. Its area, therefore, was 502.6560 acres. The city's population was 8,333. Soon after Randolph acquired the title, he advertised and sold the lots at public auction. The advertisement of the sale contained these statements:

"All the lots in this beautiful new subdivision absolutely without reserve—your opportunity has arrived when you can buy that home site right where you want it, where the people of Winchester have been trying to buy for years. No one has built a home in Winchester in recent years without first trying to buy a site from Mr. Hampton. Drive out and look this place over and if you ever expect to build that permanent home in Winchester you will certainly buy a lot in Hampton Court on Wednesday, October 29th."

"For a long time your city has been growing more than any other city in the section—a steady growth—now we find nearly all desirable places for building high class residence property has been used up. People are trying to come to Winchester. It is impossible for them to locate when they can find no homes. On Wednesday, October 29th, an opportunity will be given to the people to buy the very choicest building lots that have been offered in Winchester, when Hampton Court lots will be sold at public auction."

W. M. Holliday, on the 9th day of May, 1935, acquired title to lots Nos. 1, 2, 3, 4, and 5 in block A of this subdivision. His deed carried the restrictions contained in the deed of Hampton to Randolph. His lots lie at the southwest corner of the intersection of Boone avenue and Belmont street, as located on the plat. On Holliday declaring his intention to construct a service station on his lots for the conduct of business thereat, W. R. Sphar, who owned lots Nos. 6 and 7 in block A, adjoining Holliday's, filed this action for injunction relief to prevent his erecting the station and engaging thereat in business. The circuit court granted the relief sought. Holliday appeals.

A number of witnesses testified as to their knowledge and understanding of the intention of Hampton and Randolph to restrict the use of the lots for residences only, and as to their knowledge of the effect and influence on the use and vendible value of the lots, if and when the service station were erected and business conducted thereat. Others deposed that such station would not be injurious to either. Sphar insists that Hampton's deed to Randolph restricts the use of all of the lots into which the 45 acres were divided to residences only. Holliday contends contrariwise. The duty devolves upon us to determine the issue thus presented.

In such case the rule is that restrictions on the use of property should be given that effect which the expressed language of the instrument containing the same authorizes, when considered in connection with the circumstances surrounding the transaction and the object which the parties had in view at the time they executed it. Magowan et al. v. Young et al., 188 Ky. 74, 221 S. W. 234; Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275, 21 Am. St. Rep. 652; Easterbrook v. Hebrew Ladies' Orphan Society, 85 Conn. 289, 82 A. 561, 41 L. R. A. (N. S.) 615; Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S. W. 398; Brown v. Hojnacki, 270 Mich. 557, 259 N. W. 152, 97 A. L. R. 621; Boston-Edison Protective Ass'n v. Goodlove, 248 Mich. 625, 227 N. W. 772; Palfrey v. Killian, 224 Mo. App. 325, 27 S. W. (2d) 462; Walker v. Haslett, 44 Cal. App. 394, 186 P. 622; Dime Sav. Bank of Brooklyn v. Butler, 96 Misc. 82, 160 N. Y. S. 954.

" 'The law favors the free and untrammeled use of real property. Restrictions in conveyances

on the fee are regarded unfavorably, and are therefore strictly construed.' Scharer v. Pantler, 127 Mo. App. 433, 437, 105 S. W. 668, 669. See, also, Williams v. Carr, 213 Mo. App. 223, 225, 248 S. W. 625; Charlot v. Regents Mercantile Corporation (Mo. App.) 251 S. W. 421, 423; Breadon v. Paugh [330 Mo. 127] 48 S. W. (2d) 853, currently decided. * * * Being in derogation of the fee conveyed by the deed, such covenants will not be extended by implication to anything not clearly expressed in them, and if there be ambiguity in the terms of the covenant, or substantial doubt of its meaning, such ambiguity should be resolved, if reasonably it can be, in favor of the use complained of. Bolin v. Tyrol Investment Company, 273 Mo. 257, 262, 200 S. W. 1059; L. R. A. 1918C, 869; Breadon v. Paugh, supra.''

Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S. W. (2d) 911, 913, 81 A. L. R. 1039.

The vendor's oral representation, or his advertisement of the sale of lots, that the land is to be wholly devoted to one purpose is not operative as an estoppel to use a portion of it for a nonrestricted purpose. Such is merely to be considered as a circumstance in ascertaining from the language used in the deed the intention of the parties to the deed containing the restrictions. A dotted or other line on a plat showing the distance buildings are to be erected from the street is also a mere circumstance to be considered for like purpose. Radey et al. v. Parr et al., 108 N. J. Eq. 27, 153 A. 628; Kime et al. v. Dunitz et ux., 249 Mich. 588, 229 N. W. 477; Stephens Co. v. Binder et al., 198 N. C. 295, 151 S. E. 639; Library Neighborhood Ass'n v. Goosen, 229 Mich. 89, 201 N. W. 219. Under the general rule governing the interpretation of written instruments, it is permissible for the expositer to place himself as nearly as possible in the position of the maker of such instrument, and to this extent parol evidence is admissible to show the facts and circumstances surrounding the maker at the time the instrument was executed. Matthews v. LaPrade, 130 Va. 408, 107 S. E. 795. The parol testimony offered herein was competent only for this purpose. Thomas v. Scott, 72 S. W. 1129, 24 Ky. Law Rep. 2031; Violett's Adm'r v. Violett, 217

Ky. 59, 288, S. W. 1016; Fidelity & Columbia Trust Co. v. Harkleroad, 224 Ky. 5, 5 S. W. (2d) 477.

Restrictive covenants cannot be established by such evidence or otherwise save a recordable instrument employing adequate words so unequivocally evincing the party's or parties' intention to limit the free use of the land that its ascertainment is not dependent on inference, implication, or doubtful construction. Sullivan v. Sprung, 170 App. Div. 237, 156 N. Y. S. 332; Peterson v. City of New York, 235 App. Div. 41, 256 N. Y. S. 139; Schoonmaker v. Heckscher, 171 App. Div. 148, 157 N. Y. S. 75; Id., 218 N. Y. 722, 113 N. E. 1066; Cook v. Murlin, 202 App. Div. 552, 195 N. Y. S. 793, Id., 236 N. Y. 611, 142 N. E. 304.

Analyzing, testing, and measuring the words of Hampton's deed to Randolph by these principles, it is very plain that they entirely fail to restrict the use of the lots of Holliday only to residential purposes. They deal with, and relate to, only, the minimum cost of the residences which owners may choose to erect, and fix the distance from the street the same may be built. Indeed, the language employed does not expressly or impliedly require, nor forbid, the use of the land for any purpose. The essence of the restrictions is, if the owner erects a residence thereon, the same shall cost not less than the sum designated in the deed, and not nearer the street fronting the same than the distance fixed in it. At most, such are no more than limited "building restrictions," and not a limitation on the free use of the land.

Sphar's construction of the language of the deed inevitably requires that it be so enlarged or so extended by implication or construction as will deprive the owner of the right to the free use of a lot or lots carved from the boundary described therein, which is beyond the words employed. Restrictive covenants so ascertained and determined are not favored by the law or the courts. Kitchens v. Noland, 172 Ga. 684, 158 S. E. 562; Sweet et al. v. Hollearn, 142 Misc. 408, 254 N. Y. S. 625. He cites to us in support of his construction Atkins v. Atkins Adm'r, 203 Ky. 291, 262 S. W. 268; Anderson v. Henslee, 226 Ky. 465, 11 S. W. (2d) 154, 155; Seat v. Louisville & Jefferson County Land Co., 219 Ky. 418, 293 S. W. 986, 988; Greer v. Bornstein, 246

Ky. 286, 54 S. W. (2d) 927, 928; McMurtry v. Phillips Inv. Co., 103 Ky. 308, 45 S. W. 96, 40 L. R. A. 489.

In Anderson v. Henslee the deed embraced this restriction:

> "The property herein conveyed shall be used for residence purposes only, and only one private dwelling shall be erected on said lot."

In Seat v. Louisville & Jefferson County Land Company, the deed contained this clause:

> "We agree that the frontage on said Emerson Avenue shall be used for dwelling house sites. Lot owners whose property binds on this road are permitted to erect a dwelling thereon facing this avenue."

A plat showed Emerson avenue inclosed by red lines. The deeds to the lots contained a provision that all outbuildings on the lots should be erected on the rear of the lot and that the same should not be erected until after a residence had been erected or at the same time of the erection of a residence. The plat thereof, under section 2826, Kentucky Statutes, was a recordable instrument. This section was fully complied with in the dedication of Emerson avenue as a public highway. The plat contained written restrictions on its face. In McMurtry v. Phillips Inv. Co., the deed contained this language: "The property herein conveyed shall be used for residence purposes only." In Greer v. Bornstein, the restrictions were: The lots " 'shall be used for residence purposes only,' and all residence buildings to be erected on any of the lots 'shall set back at least 30 feet from the front property lines.' " They were inserted in every deed made to the lots and all later vendors who had convyed their lots inserted in their deeds the same restrictive covenants.

For like construction of similarly worded restrictions, see Elterich v. Leicht Real Estate Co., 130 Va. 224, 107 S. E. 735, 18 A. L. R. 441.

The restrictions considered and construed in those cases are not comparable to those in the present one. The restrictions which Sphar now contends for were embraced in the express language in the deeds involved in them. He argues that "the restriction not to erect a

dwelling closer than 25 feet of the street was intended to protect residents and dwellings." Continuing, he asserts:

"No one would want to build a handsome residence anywhere in this addition if it were not restricted, and his neighbor would open a junk yard next to him or place on the adjoining lot any kind of a cheap business house that would be a blemish on the landscape. It was the clear intent of the parties to guard against such conditions even as to residences, for they had to be set back twenty-five feet from the pavement line and to cost a sum sufficient to guarantee a substantial class of homes. * * * When it is remembered that these covenants were made by the grantor to run with the land and to be a part of the consideration for the deed, no construction should be arrived at that renders these restrictions futile and abortive."

To accept this argument and accordingly construe the restrictions would be the equivalent to enlarging or extending the same by construction which we are forbidden to do, however much we might wish the parties could accomplish what it might have been thought they were acquiring by the deed of Hampton to Randolph and what those who have since purchased lots in the subdivision expected and desired at the time they acquired their title.

It seems to be conceded that Holliday in locating the station desired to be constructed by him has recognized and intends to comply with the requirement of the restriction as to the 25 feet limit from the street. Therefore, we express no opinion as to the enforcibility of this restriction as to buildings erected for any purpose other than residential.

The judgment of the chancellor not being in harmony with our views, the same is reversed with directions to dismiss the petition and for proceedings consistent with this opinion.

The whole court sitting.