## Glenmore Distilleries Co. v. Fiorella et al.

(Decided March 25, 1938.)

CARY, MILLER & KIRK and WILLIAM L. WILSON for appellant.

O. L. FOWLER and GEORGE S. WILSON, JR., for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The Glenmore Distilleries Company, a corporation, owns a tract of approximately 22 acres of land near the city of Owensboro, in Daviess county, and lying between highway No. 60 and the Ohio river. On this tract is situated its plant, consisting of distilleries, bonded warehouses, and other buildings in which large quantities of whisky, grain, etc., are stored. It formerly owned something over 7 acres adjacent to and east of its present eastern boundary and which constitutes what is known as Logsdon's River View addition.

On July 22, 1919, it conveyed to J. R. Laswell all of this land east of its present eastern property line except a lot approximately 160 feet by 200 feet and containing less than ¾ of an acre which it had theretofore conveyed to Kattie May Mullin. The deed to Laswell retained to the grantor the right of access at all times to the river bank in order that it might place stone or other materials thereon to protect the bank from washing or falling in and it also contained the further conditions and restrictions:

"The party of the second part agrees that he will not build any building or structure, or make any change in the property herein conveyed which will in any way affect the insurance rates on warehouse 'H' belonging to party of the first part. It is further agreed that the first party's right to operate its plant known as the Glenmore Distillery for any purpose it may see proper shall not be contested by the second party or his heirs or assigns."

In August, 1919, J. R. Laswell conveyed the land which he acquired from the Glenmore Distilleries Company to Hiram Marksberry by a deed which carried the

same conditions and restrictions as contained in the deed by which he acquired title. The land later passed to one Logsdon who subdivided it and platted it as Logsdon's River View addition and a plat showing the location of lots and streets in the addition is found in the record. However, the quoted conditions and restrictions were not carried in the deeds later than that of Marksberry. By mesne conveyances Joseph Fiorella and T. J. Bartlett have become the joint owners of lots 20, 21, 22, and 23, in the River View addition, and adjoining and fronting 200 feet on Riverside avenue and extending back approximately 200 feet to the lowwater mark of the Ohio river, and also a strip of land 30 feet wide along the east side of lot 19 in such addition and extending from Riverside avenue to the Ohio river and adjoining lot 20. As we understand from the record, the lot conveyed to Kattie May Mullin by the Glenmore Distilleries Company and excepted out of its conveyance to Laswell lies between these lots of Fiorella and Bartlett and the Glenmore Distilleries property and there is a building on it known as Rio Vista Inn, apparently a place of entertainment where food and drinks are served. After Fiorella and Bartlett acquired title to the lots in the River View addition, they began the erection of two large steel tanks for the purpose of storing and handling gasoline.

Thereupon the Glenmore Distilleries Company instituted this action against them seeking to enjoin the erection of the bulk storage tanks for the storage and handling of gasoline in or upon the premises on which they were being erected, it being alleged in substance that the storing of gasoline in the tanks and their use for the purpose indicated would be in violation of the conditions and restrictions contained in the deed from it to Laswell and would constitute a nuisance in that it would be a hazard and danger to its property and the property of others nearby and to the safety and lives of persons working in or occupying such property.

A general denial of all the allegations of the petition respecting the breach of restrictions and conditions in the deed from plaintiff to Laswell and the hazard and danger to the safety and lives and property of others was made by answer. After evidence covering several large volumes was heard, the chancellor denied the relief sought by plaintiff and dismissed its petition and it is appealing.

The evidence discloses that before buying the lots in River View addition appellees consulted with the state fire marshal concerning the use of the property for the purposes for which they later acquired it and received assurance that it might be used for such purposes. It further appears that they acquired a permit to erect the tanks according to adopted standards, but that, upon protest by others, the fire marshal later attempted to revoke the permit and some question is made concerning the right of appellees to proceed with the construction of the tanks after the attempted withdrawal of the permit. We are inclined to the view that the permit could not arbitrarily be withdrawn for the erection of gasoline storage tanks constructed in conformity with adopted and recognized standards of safety and in such a way as not to endanger the lives, health, or safety of others, nor to constitute a nuisance per se. See Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091; Commonwealth v. House, 177 Ky. 829, 198 S. W. 218. The evidence for appellees fully sustains the chancellor's finding that when the tanks are constructed as they were proposed to be, according to plans drawn by an experienced engineer, they will fully conform to every requirement of standards of safety adopted by the department of fire prevention and rates. As shown by the evidence for appellees, the tanks will rest on moist earth and are equipped with lightning arresters which will conduct the electricity into the ground in the event they should be struck by lightning. The dikes to be erected around the tanks will be of sufficient size and height to hold the contents of both tanks filled to capacity. The distance from the tanks to the nearest property line is 86 feet when the adopted standards of safety require that they be 85. The distance from the present warehouse "H" on appellant's property to the nearest tank is approximately 284.

In fine, the evidence of witnesses for appellees, including men of knowledge and experience in the storage and handling of gasoline and engineers who have made a study of the subject, is to the effect that the storage and handling of gasoline in these tanks, built according to the plans and specifications which have been drawn by an engineer of long experience will not increase the fire hazard to warehouse "H" or other property in the vicinity. The evidence for appellant, including that of experts and men of experience in such

matters, is to the effect that the storage and handling of gasoline in these tanks will increase the fire hazard and constitute a menace and danger to lives and property in the vicinity; and one experienced insurance man testified that it would increase the insurance rates on warehouse "H". However, it is pointed out by the chancellor that this same witness testified that tanks of the Standard Oil Company in larger number and of greater capacity, as near or nearer to appellant's plant, did not increase the insurance rate; but, as we recall, this witness, on later being recalled, testified that the Standard Oil storage tanks had increased the insurance rate, but there is some conflict in evidence on that point.

In discussing the restrictions against buildings or structures that would affect the insurance rates on warehouse "H", the chancellor said, in substance, that if it was meant that nothing should be done that would raise the insurance rates on warehouse "H", it did not apply to a small or inconsequential increase, but only to a substantial increase in rates. In summing up on the question of increased hazard, the chancellor said:

> "And so I think, and it is my view about it, that there is an absolutely safe construction, and I believe I can agree with witnesses, since I heard this evidence, that the construction of these tanks in the modern way with the modern safety devices on them as they have and will have with a dike to be built around them in the manner described, will be absolutely safe and no hazard whatever to adjoining property."

While the findings of fact of the chancellor find so much support in the evidence, or at least the question is one of such doubt as that the appellate court under familiar rules apparently would not be authorized to disturb it, the judgment may be sustained on other and equally if not more compelling reasons. At the time the deed containing the restrictions relied on by appellant was made, the Eighteenth Amendment to the Constitution of the United States, known as the "Prohibition Amendment," had been approved and adopted by over three-fourths of the states and was to become effective at the beginning of the following year. It was then generally thought that this amendment would forever end the distillation of whisky for beverage purposes and

would render the distillery properties of practically no value for such purposes. In a comparatively short time after the deed to Laswell was made, all liquor stored in warehouse "H" was withdrawn and a permit was granted by the Internal Revenue Department of the United States to discontinue its use as a bonded warehouse; it was thereupon razed and the materials from it sold, although at the time it was in good condition. Later appellant materially reduced what is known as its bonded area and the site where warehouse "H" stood and considerable surrounding area excluded and a fence constructed some distance west of where the warehouse stood. Matters so remained until the repeal of the prohibition amendment which gave new impetus to the distillery business and then, after a lapse of about fifteen years, appellant erected a new warehouse practically on the same site as the old warehouse "H" and designated it as warehouse "H".

Some question is made concerning the nature of the restriction as to the use to which the land conveyed to Laswell might be put, that is, whether it was a restrictive covenant running with the land or otherwise. However, for the purposes of this case, it might be considered, as in fact we conceive it to be, a covenant running with the land. It then remains to be determined whether it was intended to be of limited duration in that it applied strictly to warehouse "H" then existing or whether it was perpetual and would apply to any structure that might at any time be erected on the same site.

While covenants restricting the use of property are not favorites of the law and will be strictly construed against the persons seeking to enforce them, they have always been recognized and upheld and given effect in accordance with the intention of the parties as clearly shown by the language of the instrument or determined from the language considered in connection with the apparent object of the parties as determined from surrounding circumstances and conditions. Feinberg v. Board of Education, City of Louisville, 210 Ky. 737, 276 S. W. 823; Magowan v. Young, 188 Ky. 74, 221 S. W. 234; Seat v. Louisville & Jefferson County Land Company, 219 Ky. 418, 293 S. W. 986; Holliday v. Sphar, 262 Ky. 45, 89 S. W. (2d) 327, 329.

In Sargent v. Trustees of Christian Church, 252 Ky. 57, 66 S. W. (2d) 5, 6, it is said:

"A restriction or reservation in a deed cannot be extended beyond its terms and must be construed more favorably to the grantee than to the grantor."

In Holliday v. Sphar, supra, it is said:

"In such case the rule is that restrictions on the use of property should be given that effect which the expressed language of the instrument containing the same authorizes, when considered in connection with the circumstances surrounding the transaction and the object which the parties had in view at the time they executed it. [Citing numerous authorities.]

"'The law favors the free and untrammeled use of real property. Restrictions in conveyances on the fee are regarded unfavorably, and are therefore strictly construed.' [Citing authorities.]"

Any reasonable and substantial doubt regarding the meaning of a building restriction will be resolved against the one invoking such restriction and in favor of free use of the property, Conrad v. Boogher, 201 Mo. App. 644, 214 S. W. 211, and when there is substantial and reasonable doubt as to whether the restriction is perpetual or is of limited duration, the doubt will be construed against the one claiming perpetual restriction, Dick v. Goldberg, 295 Ill. 86, 128 N. E. 723.

In McLean v. F. W. Woolworth & Company, 204 App. Div. 118, 198 N. Y. S. 467, affirmed 236 N. Y. 612, 142 N. E. 305, it is said in effect that where considered in connection with the surrounding circumstances and conditions the language used in a restrictive covenant is susceptible of two constructions, the one which limits rather than the one which extends a restriction should be adopted.

The same rule of strict construction of restrictive covenants against the party seeking to enforce them is fully discussed in 18 C. J. 386, section 450, wherein it is said in part:

"Nor will a restriction be enlarged or extended by construction, even to accomplish what it might be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written."

As fully supporting this text in 18 C. J., see Davidson v. Sohier, 220 Mass. 270, 107 N. E. 958.

In Gardner v. Maffitt, 335 Mo. 959, 74 S. W. (2d) 604, 95 A. L. R. 452, it is said in substance that restrictive covenants on the use of property in derogation of the fee conveyed will not, by implication, be extended so as to include anything not clearly expressed; and in case of ambiguity or doubt, the intention of the party must be resolved in favor of the free and untrammeled use of the land. See, also, Welch v. Austin, 187 Mass. 256, 72 N. E. 972, 68 L. R. A. 189, and other cases in annotations to Gardner v. Maffitt, supra. In Fredrick v. Hay, 104 Ohio St. 292, 135 N. E. 535, it was held that in case of doubt concerning the meaning of a restriction in a conveyance the construction least restricting the free use of the land will be adopted. It is true the rule that restrictive covenants will be strictly construed obtains only where the parties have failed to express their meaning with sufficient clarity to enable the court to say that its construction is plain and admits of no doubt.

The language of the quoted conditions and restrictions contained in the deed is significant in that it only prohibits any use of the property by the second party that would affect the insurance rate on warehouse "H," no reference being made to other buildings that had been or might be erected on appellant's property, nor is any reference made therein to the heirs or assigns of the second party as is made in the latter part of the quoted provisions and the restriction concerning the right of appellant to use its plant for any purpose that it might see proper. It is apparent that the draftsman of the deed knew how to create a perpetual covenant when it came to the right of appellant to use its plant for any purpose it might thereafter desire and might have done the same with respect to the use of the property sold to Laswell if such had been the intention of the parties. In the light of the proven circumstances and conditions and the language of the restriction which made it apply only to warehouse "H," it is apparent that the parties only had in mind warehouse "H" as it then existed and that it would soon be torn down because of no further use to appellant. To say the least, the meaning of the restriction is doubtful and uncertain, and therefore under rule obtaining in this and every other jurisdiction it cannot be enlarged or

extended by the courts so as to include structures other than that to which it at the time applied. Our conclusion that the restriction only applied to warehouse "H" standing on the property at the time the conveyance was made and terminated when it was razed only leaves for determination whether irrespective of any restrictions plaintiff is entitled to the relief sought; and that, as indicated by authorities, would depend upon whether appellee's plant, when completed in conformity with plans for construction adopted, would be a nuisance per se, which is no longer an open question in this jurisdiction. This court has consistently held that properly constructed filling stations and gasoline storage tanks to be used in wholesale or retail sale or distribution of gasoline are not nuisances per se. See Standard Oil Co. of Kentucky v. Bentley et ux., 260 Ky. 185, 84 S. W. (2d) 20; Indian Refining Company v. Berry, 226 Ky. 123, 10 S. W. (2d) 630; Slaughter v. Post, supra; Great Northern Refining Company v. Lutes, 190 Ky. 451, 227 S. W. 795. It is true, as held in the foregoing and other authorities, that gasoline filling stations and storage tanks may be so constructed or so operated as to constitute and become a nuisance, but the chancellor's finding that these tanks as erected and to be completed will not constitute a nuisance is fully sustained by the evidence and will not be disturbed.

Judgment affirmed. Whole court sitting.