[No. 8558. Department One. April 29, 1910.]

JOSEPH BERNARD *et al., Appellants,* v. ANDREW BENSON
*et al., Respondents.*[1]

VENDOR AND PURCHASER—RECORD OF CONTRACT—NOTICE—STATUTES. Construing together the recording acts, executory contracts for the sale of real estate, while not expressly mentioned, are included within the meaning of the words "deeds, grants and transfers of real property," and may be recorded, especially in view of the custom to record the same.

EVIDENCE—JUDICIAL NOTICE—CUSTOM—RECORDS. The court will take judicial notice of the custom to record executory contracts for the sale of real estate, and to record instruments affecting the title to real property in Deed Records, incumbrances in Mortgage Records, and evidences of title to personal property in Miscellaneous Records.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—RECORD—NOTICE. Under Rem. & Bal. Code, § 8785, requiring the county auditor to procure such "books for records as the business of the office requires," and in view of the uniform custom to record instruments affecting the title to real property in Deed Records, and of personal property in Miscellaneous Records, the record of an executory contract for the sale of real estate in Miscellaneous Records does not import notice.

SAME—ACTUAL NOTICE—POSSESSION OF PROPERTY. Actual notice of an executory contract for the sale of real estate, recorded in the wrong book, is not to be imported from the fact that one of the vendees had slashed about two acres of the tract, where he had subsequently abandoned the same; nor by the fact that the cattle of such vendee and of others ranged upon the property; nor by the fact that one of the vendees lived in a small house either on the property or in a county road, where such vendee did not assert any claim or right to possession in conversations with the *bona fide* purchasers.

VENDOR AND PURCHASER—BONA FIDE PURCHASERS—RIGHTS—NOTICE. A *bona fide* purchaser from a *bona fide* purchaser is not affected by subsequent notice given to his vendor.

SPECIFIC PERFORMANCE—RIGHTS OF THIRD PERSONS. Specific performance of an executory contract of sale will not be decreed, as against a subsequent *bona fide* purchaser who had notice of the

[1] Reported in 108 Pac. 439.

contract before he had fully paid for the land, where he had assumed payment of a debt, incurred liability on a note, and entered into possession and made valuable improvements in good faith; as the enforcement of the contract would be oppressive to an innocent third party.

VENDOR AND PURCHASER—DEFECTS IN TITLE—RIGHTS OF VENDEE. The purchaser of a tract of land, who finds that part of the land is owned by a third party, from whom he purchased such part, is entitled to a credit for the sum paid for such part.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 3, 1909, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action for specific performance. Affirmed.

*J. C. Cross* and *W. I. Agnew* (*A. Emerson Cross*, of counsel), for appellants.

*W. H. Abel*, for respondents.

GOSE, J.—The plaintiffs in this suit seek specific performance of an executory contract, and have appealed from the decree. The record discloses the following material facts: On the 28th day of August, 1903, the Northwestern Lumber Company, the owner of the real estate in controversy, entered into a contract with the appellant Joseph Bernard, whereby it agreed to convey the property to him. The contract was filed for record in Chehalis county, where the land was situated, on September 2, 1903, and recorded in Miscellaneous Records. On May 31, 1905, the appellant Joseph Bernard filed for record a homestead declaration which was recorded in Miscellaneous Records. On March 9, 1907, he contracted to convey a part of the land to one Sorenson. The contract was filed for record March 25, 1908, and recorded in Miscellaneous Records. On November 6, 1907, the appellant Joseph Bernard entered into a contract with the respondent Andrew Benson, whereby it was agreed that the latter should pay the balance due upon the contract with the lumber com-

pany, take a deed in his name, and convey to Salme, Eberwine, and Sorenson, respectively, upon payment by them of the purchase price, specific tracts which appellant Joseph Bernard had contracted to them, retain for himself a tract which Bernard had contracted to him, and, upon payment of the balance of the purchase price, convey the remainder to the appellant Emma Bernard. The Salme and Eberwine contracts were not recorded. On November 8, 1907, the lumber company conveyed the land to the respondent Andrew Benson, and the deed was filed for record on November 13 following, and duly recorded. Benson conveyed to Salme and Eberwine, but did not convey to either Sorenson or Emma Bernard. On the 25th day of January, 1908, the respondents Benson and wife conveyed the land in controversy to the respondent Charles Knokey, by a deed of general warranty which was filed for record February 5, 1908, and duly recorded. The consideration for the conveyance of this tract of land was $1,600, of which $186 was paid in cash, Knokey agreeing to pay a mortgage on the land amounting to $1,040, and assuming the payment of a note of $350 which Benson was owing to another party.

Before conveying to Knokey, the respondents Andrew Benson and his wife had mortgaged the land in controversy for the purpose of paying the purchase price to the lumber company. About March 1, 1908, the respondents Knokey and wife sold to the respondent Fred Lubbe a parcel of the land containing about six acres and a half, for $400, $300 of which was then paid, and the balance of $100 was paid on May 6 when the deed was delivered. The respondents Knokey and wife took possession of the land immediately after the purchase, and the respondents Lubbe and wife took possession of the tract which they had purchased about March 8, 1908, and before receiving the deed. The Knokeys and the Lubbes each began clearing the land, and the latter at once ordered lumber for a house which they later built on their

land. The entire tract was logged off timber land, unimproved and uninclosed, when Knokey and Lubbe purchased. Other essential facts will be stated later in connection with the related subjects.

The appellants contend that the recording of their executory contract, declaration of homestead, and the Sorenson contract imparted constructive notice, and that the respondents Knokey and Lubbe are not innocent purchasers. The respondents assert that the recording did not import notice, (1) because there is no statute in this state authorizing the recording of an executory contract for the sale of real estate, and (2) because the several instruments, including the declaration of homestead, were recorded in Miscellaneous Records. We will consider these points in the order suggested.

We think the first proposition is untenable. The code, Rem. & Bal. Code, § 8785, requires the county auditor to procure "such books for records as the business of the office requires." Section 8786 makes it his duty to record separately, in "large and well-bound books," "deeds, grants and transfers of real property," and all other papers or writings required by law to be recorded. Section 8781 provides that "all deeds, mortgages, and assignments of mortgages, shall be recorded" in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers from the date of their filing for record. Section 8784 provides that, "every instrument in writing purporting to convey or encumber real property," which has been recorded in the proper office, shall import notice to third parties. It is true, contracts for the sale of real estate are not expressly mentioned in the recording statutes, but we think they are included within the meaning of the words, "deeds, grants and transfers of real property." They are within the spirit of the statute, liberally interpreted. 2 Am. & Eng. Ency. Law (2d ed.), § 78. In construing a statute, all acts *in pari materia* will be read together, and where the meaning of a statute is not clear or it is ambiguous, obscure,

or indefinite in any respect, contemporaneous construction may also be resorted to in arriving at the intention of the law makers. We think we may properly take judicial notice of the fact that it has been the custom in this state to record such instruments. The construction contended for by the respondents would be productive of great mischief. Our construction is not in conflict with the points decided in *Howard v. Shaw*, 10 Wash. 151, 38 Pac. 746; *Fischer v. Woodruff*, 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742, and *Dial v. Inland Logging Co.*, 52 Wash. 81, 100 Pac. 157.

We think the respondents' second point, that the recording of an executory contract for the sale of real estate in Miscellaneous Records does not impart notice, must be sustained. As we have seen, the code, Rem. & Bal. Code, § 8785, requires the county auditor to procure such "books for record as the business of the office requires." The custom has been uniform throughout the state to record all instruments affecting the title to real estate in Deed Records, those creating an incumbrance against real estate in Mortgage Records, and those evidencing title to personal property in Miscellaneous Records. This custom has been so general and has existed for so long a period of time that it is our duty, not only to judicially notice it, but to apply it as well. In *Ritchie v. Griffiths*, 1 Wash. 429, 25 Pac. 341, 22 Am. St. 155, 12 L. R. A. 384, it was held that a deed must be properly indexed by the auditor and recorded in the proper record before operating as a constructive notice, and that constructive notice does not arise from an attempt to comply with the registry laws. In *Ames v. Miller*, 65 Neb. 204, 91 N. W. 250, the court said that the registry law should mean something, and that one claiming an interest in real estate should comply with the letter and spirit of its provisions, and thus prevent injury and damage to those who deal with reference to the record title.

The appellants contend that the respondents Knokey and Lubbe had actual notice of their relation to the property

through the possession of Sorenson and Mrs. Swedblum. In July or August, 1907, it is claimed that Sorenson slashed about two acres of land on the part of the tract which Bernard had contracted to him, and that his cattle were pastured on the entire tract. It is admitted that the slashing was done, but it is not certain that it is on the property in controversy. Moreover, the trial court was justified in finding that Sorenson had abandoned his contract. The record shows that Sorenson's cattle and the cattle of others ranged upon the property, but the testimony as to the land being inclosed is involved in too great doubt to make the pasturing of the cattle the basis for holding that it was sufficient to give notice, or put a purchaser upon inquiry. Mrs. Swedblum lived in a small house, but whether upon the land purchased by Lubbe or in the county road we cannot determine from the evidence. However, it is not important, as she is not making any claim, and did not make any claim to the property, or assert any right to the possession, in her conversations with Knokey and Lubbe. Nor did she inform them that Bernard made any claim to the property.

"No one is bound to assume that the party with whom he deals is a wrongdoer, and if he presents property, the title to which is apparently valid, and there are no circumstances disclosed which cast suspicion upon the title, he may rightfully deal with him, and, paying full value for the same, acquire the rights of a purchaser in good faith." *United States v. Detroit Lumber Co.*, 200 U. S. 321, 332.

What makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell. Benson was the owner of the record title, and there was no such possession as would impart notice or make it the duty of the purchaser to inquire.

It is next urged that, because Knokey received notice after paying $186 and before paying the balance of the purchase price, equity will only protect him to the extent of the sum paid before receiving notice of Bernard's rights; and that,

Lubbe having received notice before the property was actually conveyed to him, equity will not protect him even to the extent of the $300 paid before he received notice. Knokey received actual notice of Bernard's claim about March 15, 1908, about two months after the property was conveyed to him, and Lubbe received notice about the same time. It is fundamental that, if Knokey was a *bona fide* purchaser, Lubbe, his grantee, took the property freed from any rights of appellants, regardless of notice to him; and that, if he took without notice, it is not material whether Knokey, his grantor, was a *bona fide* purchaser. Knokey being a *bona fide* purchaser, it is material to consider the extent to which he will be protected.

It cannot be questioned that there is authority to support the appellants' contention that he can only be protected to the amount of his payment before receiving notice. As applied to this case, however, such a conclusion would be highly inequitable. The appellants, by their own acts, made Benson the owner of the record title. It is true that, in conveying to Knokey, Benson violated his trust, but the fault is with the appellants and not with the purchaser. We have seen that Knokey paid a part of the purchase price and assumed the debt of his grantor for the remainder, which he later paid to the extent of $1,040. His liability still exists for the payment of the $350 note. He also went into the possession of the property and in good faith made improvements. The appellants have tendered to Benson the purchase price of the property, but have tendered nothing to Knokey. Moreover, they allege in their complaint that Knokey colluded and connived with Benson to defraud them. When he assumed payment of the note and mortgage, he became liable to the payee. Whether in a suit to enforce payment against him he could have pleaded a failure of consideration, it is not necessary to decide. If the appellants intended to seek specific performance against him, it was their duty to take such steps as would protect him. While the mortgage was given by Ben-

son, the money derived from the loan was used in paying the purchase price of the land. The real benefit of the mortgage loan accrued to the appellants. The court directed a conveyance of the remaining land to the appellants. Benson derived no benefit from the mortgage. He used the proceeds to pay for the property. We think the true rule, and the one which best harmonizes with the broad principles of equity, is that specific performance will be denied when rights of innocent third parties have intervened so that the enforcement of the contract would be harsh, oppressive, or unjust to them. 6 Pomeroy, Equity Jurisprudence, § 794; *Curran v. Holyoke Water Power Co.*, 116 Mass. 90; *Owens v. McNally*, 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369; *Carlisle v. Carlisle*, 77 Ala. 339; *Hale v. Bryant*, 109 Ill. 34. The appellants cannot justly complain of this rule. By their own negligence they placed it in the power of Benson to sell the land, and now to permit them to set aside the sale would defraud innocent parties. As against them the record should be held to import absolute verity.

The decree directs a conveyance to the appellants of that part of the land now held by the Bensons, except the tract contracted to them by Bernard in 1903, and finds that Benson has received from sales of the land $7.85 in excess of the purchase price paid by him; and a judgment is entered in favor of the appellants and against the Bensons for that sum. The point is made that the court erroneously allowed Benson a credit of $226.85. As we have seen, in 1903, the appellants contracted to Benson a part of the land embraced in their contract with the lumber company, and their trust agreement with Benson directs him to retain that tract. After receiving a deed for the land from the lumber company, it was discovered that a part of the land which the appellants had contracted to Benson was owned by a third party from whom Benson later purchased it. These facts are affirmatively pleaded in Benson's answer, and we think the evidence justified the trial court in allowing him this credit.

The decree is affirmed, without prejudice to the appellants' right to maintain an action at law against Benson for damages for breach of the contract.

· RUDKIN, C. J., FULLERTON, and CHADWICK, JJ., concur.