# BOYER v. PAHVANT MERCANTILE & INVESTMENT CO.

No. 4614.  Decided April 22, 1930.  (287 P. 188.)

*Hamilton Gardner,* of Salt Lake City, for appellant.

*Charles D. Moore,* of Salt Lake City, for respondent.

FOLLAND, J.

An opinion was heretofore written and filed in this case wherein the judgment of the district court was reversed and the cause remanded, with directions. Upon consideration of a petition for rehearing which was filed by respondent, we entertained some doubts as to the correctness of that opinion and granted a rehearing. The case was again argued by respective counsel. Upon further consideration we are of the view that the conclusions reached in the former opinion as to the disposition of the case were correct, although we reach such result by means of other reasons than those heretofore expressed. The former opinion, therefore, is withdrawn and will not be printed, but this opinion will stand and be published as the decision of the cause.

This case involves a controversy as to the priority of a trust deed and a warranty deed, both executed by a common grantor and affecting real estate situate in Millard county, this state. The execution of the trust deed was prior in

time. The case hinges on the question of whether the trust deed was properly or effectively recorded so as to impart constructive notice of its contents to the grantee of the warranty deed, a subsequent purchaser for value and without knowledge of the trust deed. The plaintiff claims under the trust deed, the defendant under the warranty deed. No claim is made that defendant had knowledge or actual notice of the trust deed. The trial court rendered judgment in favor of defendant adjudging the warranty deed the superior and better title. Plaintiff appeals, claiming that on the facts found and stipulated, which are not in dispute, he, instead of defendant, was entitled to a judgment declaring the trust deed, which in effect is a mortgage, a lien superior to the warranty deed.

The material and stipulated facts are:

To secure the payment of a loan William D. Livingston and his wife executed and delivered the trust deed of the property in question, and of other real estate, to Boyer as trustee for the bank, which, on January 20, 1917, was filed for record by the plaintiff with the county recorder of Millard county, and entered in the entry book as entry No. 7001. The information entered in the entry book contains all that was required by the statute except a brief description of the property. The number of the instrument, name of grantor and grantee, the kind of instrument, date and time of filing were correctly noted. The trust deed was thereafter timely recorded, or copied, at length in Book E of Mortgages, pages 351 to 359 of the Record of the county recorder. It was indexed in the indices of grantors, grantees, and mortgagors and mortgagees of the records, but without any description of the property covered by said deed being entered in the indices or any of them except for the words "See record for description." The trust deed was at the time abstracted as to all of the land described in it except the property in question, which was omitted from the abstract record. Some time during the years 1925 and 1926 the county recorder corrected the abstract record

by including therein a proper description of the land in question.

On February 7, 1921, for value, the Livingstons, by warranty deed, conveyed the property in question to the Western Securities Investment Company, who by warranty deed, in June, 1921, for value, conveyed it to Pahvant Mercantile & Investment Company, the defendant here. These warranty deeds, on the face of each, purported to convey a clear and unincumbered title to the land described, and each was timely and properly filed for record and recorded in the office of the county recorder of Millard county.

It is also stipulated and found that, when the Western Securities Investment Company purchased the property, it caused a search of the record title of the property to be made in the office of the county recorder by the Fillmore Abstract Company, licensed to search land titles and make abstracts thereof, but, because of the failure of the county recorder to make any notation of the trust deed in the abstract record pertaining to the particular land in question, the abstract company failed to find the record of it, and failed to report the trust deed to the company. The Western Securities Investment Company and the defendant, at the time of their respective purchases, both were without actual knowledge of the existence or transcription upon the official records of said county of said deed of trust or of the contents thereof as far as said deed of trust covers or relates to the land in controversy other than such knowledge and notice, if any, as they may be chargeable with by reason of the recording of the trust deed in the manner stated.

The trial court entertained the view that under our recording statutes the record was such that it did not impart notice to subsequent purchasers of the contents of the trust deed, and held respondent's title superior to the claim of appellant.

Here are two claimants to a parcel of land—the appellant as prior mortgagee, the respondent as the subsequent purchaser. Both acted in good faith and paid a valuable con-

sideration. Through fault of the county recorder in failing to enter a description of the land referred to in the trust deed in the indices and entry book, and to make any entry thereof in the abstract record, one of the parties must lose the land and be left to his action for damages against his warrantor or the county recorder.

The legal questions presented are stated by respondent as follows:

"(1) Did the mere filing of appellant's mortgage for record absolve appellant from all further responsibility in respect of seeing that the instrument was properly recorded and charge the appellee with constructive notice of the contents of the recorded instrument irrespective of the sufficiency of the record?

"(2) If the burden rested on the appellant to see that the mortgage was recorded in the manner required by Statute, was the record of the mortgage in question sufficient to impart constructive notice of its contents to appellee?"

Both these questions have been ably and fully argued in the briefs. In view of the facts stipulated by the parties, which are substantially followed in the findings of the court, we deem it unnecessary to pass directly on the first question stated above, notwithstanding both parties in their briefs devote most of their space to that point.

It may become necessary at some future time, and in a proper case, for this court to decide whether a mere filing of an instrument for record with the recording officer is sufficient to impart constructive notice. The facts before us do not call for a decision on this point. Anything we say not required by the facts stipulated by the parties and found by the court may well be regarded as dicta.

The trust deed was not only filed for record with the proper recording officer, but was noted in the entry book with the information required by statute as to names of parties thereto, its date, time of filing, and number. The requirement of a brief description of the premises was omitted. The instrument was fully and accurately recorded

by being copied into the proper record book, and correctly noted in the grantor's, grantee's, mortgagor's, and mortgagee's indices. All that was lacking in these index entries was the "brief description of the premises," but in lieu thereof was written the words, "See record for description."

The recorder is required by statute (section 1579, Comp. Laws Utah 1917, subd. 6) to keep an "abstract record" in which shall be entered all mortgages, deeds of trust, and other instruments showing the number of the instrument, names of parties, brief description of property charged, etc. There was an entire failure on the part of the recorder to make any entry affecting the property in question in the "abstract record" until some time after respondent had acquired its deed to the premises.

It is specifically stated in the stipulation of facts that "because of the failure of the County Recorder of Millard County to make any notation of the said trust deed in the abstract record in the county recorder's office pertaining to the land above described, the said abstract company failed to find the record of said deed of trust," etc.

It is nowhere said in the stipulation of facts that the failure to find the record of the trust deed was because of any faulty indexing or deficient entry in the entry book, but it is definitely stated to be because it was not included in the abstract record. After a careful search and the reading of scores of cases, we are unable to find any case which turns upon the failure of the recorder to abstract any instrument in the abstract record. No such case is cited in the briefs. The relevant cases all involve one or more of the following deficiencies, namely, of faulty recording (that is, copying into the record book) : Failure to index at all, or failure to correctly index. The naked question for decision, therefore, is whether or not the record of the trust deed by filing, entry in the entry book, copying into the record book, and the indexing, though incomplete, was nevertheless sufficient to impart constructive notice to subsequent purchasers. The sections of the statute, Comp.

Laws Utah 1917, material to be considered here are sections 4875, 4900, and 4901. These sections are in title 93 under the general heading "Real Estate." Section 4875 requires that "every instrument of writing, * * * to operate as notice to third persons, shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated. * * *" Section 4900 states that "Every conveyance or instrument in writing * * * required by law to be recorded in the office of the county recorder, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lien-holders shall be deemed to purchase and take with notice." Section 4901 provides that every such conveyance "which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser," etc.

There is nothing in these sections nor the other sections in title 93 which specifically defines what is meant by the word "recorded." Sections 1576, 1579, and 1592, all in title 20 under the general heading "Counties," and in the chapter entitled, "County Recorder," contain matter pertinent to the recording of instruments. Section 1576 specifies the manner of recording documents, thus:

"He [the recorder] must, on the payment of the fees for the same, record in books provided for the purpose, in a fair hand, or by means of a typewriter, camera, or other machine, all papers, documents, records, and other writings required or permitted by law to be recorded."

This section, which defines the manner of recording, indicates that this is done by transcribing or copying into the proper record book, and by implication negatives the idea that "recording" includes indexing or abstracting. Section 1579 provides for the books which the recorder must keep, and under each heading specifies the kind of entries to be made therein. In this section it is provided that the re-

corder must keep an "entry book," a "grantor's index," a "grantee's index," a "mortgagor's index," "mortgagee's index," and an "abstract record." Section 1592 covers the liability of the recorder for failure to do his required duty:

"If any recorder to whom any instrument proved or acknowledged according to law, or any paper or notice which may by law be recorded, is delivered for record:

"1. Neglects, or refuses to record such instrument, paper, or notice within a reasonable time after receiving the same; or

"2. Records any instrument, papers, or notices, wilfully or negligently, untruly, or in any other manner than is hereinbefore directed; or

"3. Neglects or refuses to keep in his office such indexes as are required by this chapter, or to make the proper entries therein; or

"4. Neglects or refuses to make the searches and to give the certificate required by this chapter; or

"5. Alters, changes, or obliterates any record or paper deposited in his office, or inserts any new matter therein,

"He shall be liable to the party aggrieved for three times the amount of damages which may be occasioned thereby."

It will be noted that the basis for liability is segregated. Subdivision 1 has to do with the failure to record an instrument. Subdivision 2 covers faulty recordation. No. 3 has to do with failure to index. This section would indicate that the word "record" as used in the statute has reference alone to the transcription of a document into the record book. This language, taken in connection with that contained in section 1576, would seem to indicate that an instrument might be "recorded," though not indexed or abstracted.

The weight of authority seems to be that an index is no part of the record, and that a mistake in it does not invalidate the notice afforded by a record otherwise properly made. 5 Thompson on Real Property, 146, § 4124; 23 R. C. L. 190, § 48; 1 Jones on Mortgages, 907, § 637; Warvelle on Abstracts, 72, § 68. Note in 96 Am. St. Rep. 404; *Sinclair* v. *Gunzehauser*, 179 Ind. 78, 98 N. E. 37, 100 N. E.

376; *Seat* v. *Louisville & Jefferson County Land Co.*, 219 Ky. 418, 293 S. W. 986. The rule is stated in Jones on Mortgages, supra, as follows:

"The general policy of the recording acts is to make the filing of a deed, duly executed and acknowledged, with the proper recording officer, constructive notice from that time; and although it be provided that the register shall make an index for the purpose of affording a correct and easy reference to the books of record in his office, the index is designed, not for the protection of the party recording his conveyance, but for the convenience of those searching the records; and instead of being a part of the record, it only shows the way to the record. It is in no way necessary that a conveyance shall be indexed, as well as recorded, in order to make it a valid notice."

There are cases, however, to the contrary, particularly in the states of Iowa, Washington, and North Carolina. It is unnecessary for us in this case to align this court with either the majority or minority rule on that question.

Irrespective of whether the index is considered essential to complete recording or not, the rule is that it will be sufficient if enough is disclosed by the index to put an ordinary prudent examiner upon inquiry. 1 Jones on Mortgages, 910; 23 R. C. L. 193; 5 Thompson on Real Property 152, 153, § 4126; 41 C. J. 568, "Mortgages"; 91 Am. Dec. 109, Note; Warvelle on Abstracts, 73.

In Iowa it is held that indexing is essential to complete recording. *Barney* v. *McCarty*, 15 Iowa, 510, 83 Am. Dec. 427. The record is, nevertheless, sufficient to impart notice where the recorder, instead of noting the description of the property in the index, has, in lieu thereof, written "see record" (*Calvin* v. *Bowman*, 10 Iowa, 529; *White* v. *Hampton*, 13 Iowa, 259), or "certain lots of land" (*Bostwick* v. *Powers*, 12 Iowa, 456). In each instance the subsequent purchaser was charged with constructive notice. To similar effect are *Oconto* v. *Jerrard*, 46 Wis. 317, 50 N. W. 591; *Bardon* v. *Land & River Imp. Co.*, 157 U. S. 327, 15 S. Ct. 650, 39 L. Ed. 719; *Breed* v. *Conley*, 14 Iowa, 269, 81 Am. Dec. 485; *Jones* v. *Berkshire*, 15 Iowa, 248, 83 Am. Dec.

412; *Sinclair* v. *Slawson,* 44 Mich. 123, 6 N. W. 207, 38 Am. Rep. 235.

The case of *Barney* v. *McCarty,* supra, is relied upon and quoted at length in respondent's brief. The decision was written by Judge Dillon. A mortgage, given by the owner of real property, was filed for record and recorded at large in the proper record book, but an index of the instrument was entirely lacking. Later the property was sold and a deed given. The question for determination was whether the record as made imparted notice; the mortgage not being indexed at all. The court held that the index was essential under the statutes of Iowa to impart notice. That the case of *Barney* v. *McCarty* supra, did not go beyond that specific point is clearly indicated by the case of *Barney* v. *Little,* 15 Iowa, 527. That decision was also written by Judge Dillon speaking for a unanimous court. In *Barney* v. *Little,* handed down the day after the decision in *Barney* v. *McCarty,* the only question presented was whether the registry of a mortgage was so imperfect and incomplete as not to charge subsequent purchasers and mortgagees with constructive notice. The statute provided that the recorder must keep an entry book and an index which must show (1) the grantors, (2) the grantees, (3) the time when the instrument is filed, (4) the date of the instrument, (5) the nature of the instrument, (6) the book and page where the record may be found, and (7) the description of the lands. The mortgage was recorded in the proper book. The index gave the name of the mortgagor and mortgagee and the nature of the instrument, but, in referring to the page where recorded, it gave the paging inaccurately. There was wholly omitted from the index the time of filing, the date of the instrument, and a description of the lands conveyed. It was held, however, that subsequent searchers of the record were chargeable with notice of plaintiff's mortgage. In the course of the opinion Judge Dillon says:

"In the case of *Barney* v. *McCarty,* decided at the present term, we had occasion to consider the nature of the index book under the former

recording act in this State. It was there held that the total omission to index the plaintiff's mortgage, deprived the record of it of the quality of imparting implied notice.

'The general nature and spirit of that law and of the present one are the same. * * * The chief object of the index book is that which its name implies. Its function is in the first place to indicate the existence of all instruments which are recorded or on file to be recorded. If there is no index of an instrument the searcher after titles has a right to assume that none such is on file or on the record.

"Its office in the next place is to point out the book and page where the instrument is recorded. These are the essential uses and purposes of the index book. To facilitate the examination of titles, the present law, it is true, has directed the index to contain the date of the instrument; the date of filing and description of the property. Still this does not supersede the necessity of a record. * * *

"The prior decisions of this Court have settled that, while the index, which serves, so to speak, as a finger board to direct the inquirer, must not mislead him to giving a totally wrong description of the lands. (*Scoles* v. *Wilsey* et al., 11 Iowa, 261), yet it is not necessarily and essentially a prerequisite to a valid registration that the index should contain a description of the lands conveyed. It is sufficient if it points to the record with reasonable certainty. *Bostwick* v. *Powers* 12 Iowa 456; *Calvin* v. *Bowman,* 10 Iowa, 529.

"If the grantor's and grantees' names are given in the index, with the book and page where the instrument is recorded, and if the instrument is there really recorded, we believe that this, so far as the object of the recording act is concerned, is a substantial, though it may not be in all respects, as to the index book a literal compliance with the law. For the record book and the index book are not to be considered as detached and independent books, but related and connected ones, and a party (assuming it to be an instrument which the law authorizes and requires to be recorded) is, where the index makes the requisite reference, affected with notice of any facts which either book contains with respect to the title of his proposed grantor.

"Were it not for the mispaging in the index of the plaintiff's mortgage, we are all agreed that the requirements of the law were, in substance, observed. It remains briefly to consider the effect of this error.

"The proposition is indisputable and clear, founded in reason, and sanctioned by authority, that 'if an ordinarily diligent search of the records will bring to an inquirer knowledge of a prior incumbrance or alienation, he is presumed to know of it.' 2 Wash. Real Prop. 596, § 63; *Flynt* v. *Arnold,* 2 Metc. [Mass.] 619-625. The prior

decisions of this court (*Bostwick* v. *Powers*, and *Calvin* v. *Bowman*), rest upon this principle; and although questioned by counsel, they have not produced any authority showing, or tending to show, that these cases should have been decided differently."

The court then points out that, notwithstanding the inaccuracy of the paging a competent and careful searcher of the records would be led to the document recorded, and that subsequent purchasers are chargeable with notice.

Another case strongly relied upon by respondent is *Ritchie* v. *Griffiths*, 1 Wash. 429, 25 P. 341, 12 L. R. A. 384, 22 Am. St. Rep. 155. This case holds that mere delivery of a deed for record does not impart constructive notice, as, under the Washington statute, indexing is an essential part of recording. Here the prior deed, while copied into a record book, was not indexed at all in any of the index books.

Other cases are cited in the briefs addressed to the point of whether mere filing for record imparts notice. In view of the position we take as to the decisive question in the case, there is no need to further refer to them.

Our conclusion is that sufficient appeared on the records of the county recorder of Millard county to bind respondent with effective notice of the prior trust deed of appellants.

This, of course, in no way affects the duty of the county recorder to fully comply with the statute in the making of full and proper entries in the various books it is his duty to keep, including indices and an abstract record. "Public policy and the rights of those directly interested in the proper recording of instruments require that recorders be held to a strict and literal performance of their official duties." 23 R. C. L. 271. His duty in respect to entering recorded instruments in the abstract record is a duty owing to the subsequent purchaser rather than to the original grantee. *Green* v. *Garrington*, 16 Ohio St. 548, 91 Am. Dec. 103. The recorder may be liable to a subsequent purchaser who sustains damage as a necessary and proximate result

of such official negligence. *Rising* v. *Dickinson,* 18 N. D. 478, 121 N. W. 616, 23 L. R. A. (N. S.) 127, 138 Am. St. Rep. 779, 20 Ann. Cas. 484; *Title Guaranty & Surety Co.* v. *Commonwealth,* 141 Ky. 570, 133 S. W. 577. The index and abstract record are for the convenience of those who desire to examine the record. 23 R. C. L. 191.

The judgment of the trial court is reversed, and the cause remanded to the district court of Salt Lake county, with directions to proceed with the case in conformity with the views expressed herein; appellant to recover costs.

CHERRY, C. J., and EPHRAIM HANSEN, J., concur.

STRAUP, J. (dissenting).

The statutes which I think are material to the controversy are section 1579 of chapter 10, title 20; section 4875 of chapter 2; and sections 4900 and 4901 of chapter 4, title 93, Comp. Laws Utah 1917.

Section 1579 provides:

"Every recorder must keep:

"2. An 'entry book,' in which he shall immediately upon receipt of any instrument to be recorded * * * enter in the order of its reception or entry, as the case may be, the names of the parties thereto, its date, the day of the month, the hour, and the year of filing any such statement or marginal entry, and *a brief description of the premises*" and endorse thereon the number of such entry.

"2. A 'grantor's index,' in which shall be indexed all deeds * * * which shall show the number of the instrument, the name of each grantor, in alphabetical order, the name of the grantee, date of instrument, time of filling, kind of instrument, consideration, the book and page in which it is recorded, *and a brief description of the premises.*"

"3. A 'grantee's index,' * * * which shall show" the same notations including "*a brief description of the premises*" as are required in the grantor's index.

"4. A 'mortgagor's index,' in which shall be entered all mortgages, deeds of trust, liens, and all other instruments in the nature of an incumbrance upon real estate, which shall show the number of the in-

strument, name of each mortgagor, debtor, or person charged with incumbrance, in alphabetical order, the name of the mortgagee, lienholder, creditor, or claimant, date of instrument, time of filing, nature of instrument, consideration, the book and page in which it is recorded, and *a brief description of the property charged.*"

"5. A 'mortgagee's [mortgagor's] index,' in which shall be entered" and noted all matters required in the mortgagor's index, including *"a brief description of the property charged."*

"6. An 'abstract record,' which *shall show by tracts every conveyance or incumbrance recorded,* the date and character of the instrument, time of filing the same, and the book and page where the same is recorded, *which book shall be so kept as to show a true chain of title to each tract and the incumbrances thereon,* as shown by the records of his office." (Italics added.)

### Section 4875 provides:

"Every conveyance of real estate, and every instrument of writing, setting forth an agreement to convey any real estate, or whereby any real estate may be affected, to operate as notice to third persons, shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proof, acknowledgment, certification, or record, and to all other persons who have had actual notice."

### Section 4900 provides:

"Every conveyance or instrument in writing affecting real estate, executed, acknowledged, or proved, and certified in the manner prescribed by this title * * * required by law to be recorded in the office of the county recorder, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lienholders shall be deemed to purchase and take with notice."

### Section 4901 provides:

"Every conveyance of real estate within this state hereafter made, which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

In January, 1917, William D. Livingston and his wife, for a valuable consideration, and to secure the payment of sums of money therein specified, executed and delivered to the plaintiff, T. W. Boyer, trustee, a trust deed in which a number of separate parcels of land in Millard county, Utah, are described: One parcel described as the E. ½ of the N. W. ¼ and the W. ½ of the S. E. ¼ of sec. 17, tp. 16 S., R. 8 W.; a parcel in sec. 32, tp. 16 S., R. 7 W.; a parcel in sec. 33, tp. 16 S., R. 7 W.; a parcel in sec. 28, tp. 16 S., R. 7 W.; a parcel in sec. 4, tp. 17 S., R. 8 W.; a parcel in sec. 27, tp. 16 S., R. 8 W.; a parcel in sec. 33, tp. 16 S., R. 8 W.; a parcel in sec. 15, tp. 16 S., R. 8 W.; a parcel in sec. 26, tp. 16 S., R. 8 W.; a parcel in sec. 26, tp. 16 S., R. 8 W.; a parcel in sec. 31, tp. 16 S., R. 7 W.; a parcel in sec. 31, tp. 19 S., R. 1 E.; a parcel in sec. 25, tp. 19 S., R. 1 W.; a parcel in sec. 36, tp. 19 S., R. 1 W.; a parcel in sec. 7, tp. 20 S., R. 1 E.; together with described water rights and easements.

The only land in controversy is the land described in sec. 17, tp. 16, etc. It is to be noticed that all of the other parcels are in other sections. The trust deed, about a month after its execution, was left with the county recorder for filing and recordation. It was entered in the entry book and copied and transcribed in Book E of Mortgages, at pages 351 to 359, in the recorder's office. It was indexed in the general indices of grantors and grantees and of mortgagors and mortgagees without a brief or any description of the premises conveyed or charged by the instrument, except a notation "See record for description." The instrument was also abstracted in the "abstract record" as to all of the lands described in the instrument, except the parcel in section 17, the land in controversy, which was wholly omitted from the abstract record.

Since divergent views are entertained as to the manner in which the trust deed was exhibited on the records of the county recorder, I set forth the findings of the trial court with respect thereto. The court found:

"That on the 20th day of January, 1917, the said trust deed was filed for record by the plaintiff with the County Recorder of Millard County, State of Utah, at 2:11 p. m., on said day; that the said trust deed was thereupon copied at length in Book 'E' of Mortgages, at Pages 351 to 359 of the records of the County Recorder of said Millard County, Utah, and entered in Entry Book or Reception Book, as it is some times called, No. 7001, in the following form:

"Number                       From                        To
"7001 Wm. D. Livingston, et ux. T. W. Boyer,
                              " 'Date of instrument                Trustee.
                              " '12—26—1916.
" 'Time of Filing                                    Kind of Inst.
" '1-20-1917, at 2:11 p. m.                          Trust Deed
" 'Recorded at Request of Continental National Bank.'

"That the said entry in the said reception book contained *no description or reference to the property covered by said trust deed;* that the said trust deed was at the same time indexed in the General Indices of Grantors, Grantees and Mortgagors and Mortgagees of the records of said county recorder's office, but without *any description of the property covered by said deed being entered in said indices* or any of them except for the words 'see record for description;' that the said trust deed was at said time abstracted as to all of the land described in it except that certain parcel hereinbefore particularly described (in *Sec. 17*, the land in controversy), *which said parcel was omitted from the said abstract on the said county recorder's records.*" (Italics added.)

Such finding is not questioned, and is in the language of the stipulation of the parties. So the matter stood when, on February 17, 1921, about four years thereafter, the Western Securities Investment Company, for a valuable consideration, purchased the lands in section 17, the lands in controversy, from the Livingston Land & Cattle Company, and at which time William D. Livingston and his wife, for value, executed and delivered to the Western Securities Investment Company a warranty deed conveying a clear and unincumbered title to such lands, which deed was duly recorded February 21, 1921. Thereafter, and on June 19, 1921, the Western Securities Investment Company, for value, by warranty deed free and clear of incumbrances, conveyed the lands in section 17 to the Pahvant Mercantile

& Investment Company, the defendant herein, which deed was also duly recorded. So the matter again stood until "some time during the years 1925 and 1926," and after this action was commenced, when the recorder corrected the abstract record in the recorder's office wherein the trust deed was abstracted so as to include a description of the lands in section 17, and which, up to that time, had been wholly omitted from the abstract record.

The court further found that, when the Western Securities Investment Company purchased the lands in section 17,

"and at the time of such purchase it caused search of the record title of said land to be made in the office of the County Recorder of Millard County, Utah, by the Fillmore Abstract Company, a Utah corporation licensed to search land titles and make abstracts thereof within the State of Utah; *that because of the failure of the County Recorder of Millard County to make any notation of the said trust deed in the abstract record in the county recorder's office pertaining to the land above described* (in Sec 17), *and of the other failures in properly entering and indexing said trust deed the said abstract company failed to find the record of said deed of trust as pertaining to the land above described* (in Sec. 17) and failed to report said trust deed to the said Western Securities Investment Company, and the said last named corporation purchased the said described land without any actual knowledge of the existence or transcription upon which the official records of said county of said deed of trust or of the contents thereof so far as said deed of trust covered or relates to the land above described, other than such knowledge, if any, as it may be chargeable with by reason of the recording of said trust deed in the manner aforesaid." (Italics added.)

The court also found that the Pahvant Mercantile & Investment Company, for a valuable consideration, purchased the lands in section 17, "without actual knowledge of the existence of said trust deed with relation to the lands above described (in section 17) other than such knowledge and notice, if any, as it may be chargeable with by reason of the recording of said trust deed in the manner aforesaid."

As a conclusion of law the trial court found that the title of the Pahvant Mercantile & Investment Company was superior to and free from the lien of the trust deed, and

rendered a judgment accordingly, from which the plaintiff and his beneficiary under the trust have prosecuted this appeal. The theory on which the case was presented to the trial court was upon the contention of the plaintiff that, under section 4900, the trust deed from the time of filing it with the recorder for record imparted notice of its contents to subsequent purchasers, regardless of any defects or omissions in recording it, and even though it had not been spread on the records, or any notation made of it in the indices or abstract record; that, when the plaintiff presented the trust deed, properly executed and acknowledged and entitled to be recorded, to the recorder for filing and for record, and paid the fee therefor, he had done all he was required to do; and, if the recorder failed or omitted to record the instrument so as to impart notice to subsequent purchasers of its existence and contents, such failure or omission may not be visited on the plaintiff because the recorder, a public officer charged with public duties, was not the agent of the plaintiff. The contrary was contended by the defendant. The plaintiff also contended that the statutory provisions relating to indices and the abstract record are not a part of our recording acts, and in no particular modify or control section 4900, and hence need not be considered with it, and that under the provisions of section 4900 the trust deed, "from the time of filing the same with the recorder for record," imparted notice of its contents to all subsequent purchasers, though it may have been improperly or defectively recorded or wholly omitted from the records.

On the other hand, the defendant contended that the statutory provisions respecting the entry book, the indices, and the abstract record are a part of our recording acts, and hence must be considered in connection with sections 4875, 4900, and 4901; that an instrument "to operate as notice to third persons" is required, not only to be acknowledged and left with the recorder for record, but must also be "recorded in the office of the recorder of the county"

(section 4875); that depositing or filing an instrument with the recorder for record is not recording it, and that it is not recorded so as to impart notice until transcribed and entered in the proper record books kept for such purpose; that the language in section 4900 that an instrument imparts notice to subsequent purchasers "from the time of filing the same with the recorder for record" but means that, when an instrument in due course is transcribed and entered in books kept for that purpose, the record relates back and takes effect from the time the instrument was filed with the recorder for record, and that it is *the record* which imparts notice of the contents of the instrument; that the entry book and indices and abstract record are requisites of our recording acts; that failures or omissions of the recorder in not properly and sufficiently recording instruments so that the record may affect notice may not be visited on subsequent purchasers searching the record title.

The case was here presented on such respective theories. Nearly the whole of the appellant's brief of one hundred fourteen pages, and the whole of the respondent's brief of fifty-eight pages, are devoted to a consideration of such theories and propositions. Many cases are cited by each party in support of his contention. On the first hearing the majority of this court, three members thereof, adopted the theory of the appellant, and thus reversed the judgment of the court below. Two members of the court dissented. That the cases are in conflict on the subject was conceded. The prevailing opinion followed the minority rule (*Mangold* v. *Barlow,* 61 Miss. 593, 48 Am. Rep. 84) as being the better rule, and the dissenting members the majority rule. *Ritchie* v. *Griffiths,* 1 Wash. 429, 25 P. 341, 12 L. R. A. 384, 22 Am. St. Rep. 155.

A petition for a rehearing was granted, the case reargued and resubmitted on the same briefs theretofore filed in the cause. A prevailing opinion is now rendered to the effect that the theory stated in the former opinion, and on which the case was ruled, was not necessary to a proper disposi-

tion of the case, and that the only question necessary to a decision is as to whether the entries in the entry book, the the indices, and the abstract record with respect to the trust deed, though not in compliance with the statute, nevertheless were sufficient to put one with due diligence on notice of the existence and contents of the trust deed as to all of the lands described therein, including the lands in controversy in section 17. In the appellant's brief the point also is briefly adverted to and cases cited in support of the doctrine "that a person searching a record is charged with notice of every fact which the records disclose and of all other facts with which, by the exercise of reasonable diligence, he ought to become acquainted," and in such connection again urged that indices and abstract records are mere conveniences and facilities in searching record titles, but are not dependable nor to be relied on, nor requisites to a complete recordation of an instrument. On an examination of the pleadings, the stipulation of facts, and the findings, I do not see wherein the case was presented or submitted to the trial court on the theory on which it is now ruled. I have set up all of the findings bearing on the subject. No finding is made that the licensed abstract company, employed by the defendant's predecessor to search and report on the record title of the Livingstons and as to their right to convey the premises in controversy, was negligent or failed to exercise due or reasonable diligence, or that by the exercise of diligence it could or ought to have been discovered that the contents of the trust deed as to the property conveyed or charged by it was not accurately noted or reflected in the abstract record, and that such deed related to, or was a charge, on, the lands in question. What the court found was, not that the licensed abstract company was negligent or failed to exercise due diligence, but that "because of the failure of the County Recorder of Millard County to make any notation of the said trust deed in the abstract record in the county recorder's office pertaining to the lands above described (in Sec. 17) *and of the*

*other failures in properly entering and indexing said trust deed,* the said abstract company failed to find the record of said deed of trust as pertaining to the land above described (in Sec. 17) and failed to report said trust deed to the said Western Securities Investment Company," the predecessor of the defendant. It is such stated failures of the recorder, and not because of any want of diligence upon the part of the licensed abstract company, which, as found by the court, led to the *failure to find* that the trust deed pertained to or included the lands in question.

It is, however, suggested that the further finding that the defendant and its predecessor purchased without "actual knowledge" of the existence of the trust deed, and that it conveyed and covered the land in question, "other than such knowledge and notice, if any, as it may be chargeable with by reason of the recording of such trust deed in the manner aforesaid," involved the question of diligence or the want of it in examining the record title and the question of constructive notice. But no finding was made on the subject. The reason for that I think is apparent, and is because the plaintiff asserted, and the defendant denied, that the mere presentation of the trust deed to the recorder for record and the mere filing of it, under section 4900, constituted notice of the existence and contents of the trust deed to all subsequent purchasers, no matter how improperly or defectively it may have been entered in the records of the county recorder. And such was the proposition or question presented on this appeal.

Though it be assumed that the finding as made included or involved the proposition of whether one in searching the record title of the Livingstons with respect to the lands in question with due diligence could or ought to have discovered the contents of the trust deed, and that it conveyed or charged lands, not only as described in the abstract record, but also lands not therein described, yet I think sufficient facts were not made to appear to lead to a discovery of the trust deed in such particular. In considering the

case from such viewpoint, I think it important to consider the effect of the statute relating to the entry book, the indices, and the abstract record required to be kept by the recorder and the entries to be made therein. In the prevailing opinion it is said that "an index" by the weight of authority is no part of the record, and that a mistake in it does not "invalidate the notice afforded by a record otherwise properly made." That but begs the question and assumes the proposition that there was a "record properly made" which afforded notice. Further, we are concerned not alone with a mere "index" or even with a mere "mistake" in an index. To support the contention that "an index" is no part of our recording acts the prevailing opinion cites and quotes from 1 Jones on Mortgages, 907, § 637. It is to be noted that by reading the whole section it is seen the author adopts the rule that an instrument properly acknowledged and entitled to be recorded is constructive notice of its contents affecting all subsequent purchasers from the time the instrument is left in the recorder's office for record, whether it is in fact recorded or not; that, when a grantee has delivered the instrument to the recorder for record, he has done all the law requires of him for his protection, and, if a subsequent purchaser is injured because the instrument was not recorded or was improperly or defectively recorded, he and not the grantee must stand the loss. I think such doctrine is against the undoubted weight of judicial authority when applied to recording acts such as ours, and is inconsistent with the meaning and intent of such acts. *White* v. *Himmelberger-Harrison Lumber Co.*, 240 Mo. 13, 139 S. W. 553, 42 L. R. A. (N. S.) 151; *Cady* v. *Purser*, 131 Cal. 552, 63 P. 844, 82 Am. St. Rep. 391; *Federal Const. Co.* v. *Curd*, 179 Cal. 479, 177 P. 473; *Ritchie* v. *Griffiths*, 1 Wash. 429, 25 P. 341, 12 L. R. A. 384, 22 Am. St. Rep. 155; *Bernard* v. *Benson*, 58 Wash. 191, 108 P. 439, 137 Am. St. Rep. 1051; *Barney* v. *McCarty*, 15 Iowa, 510, 83 Am. Dec. 427; *Koch* v. *West*, 118 Iowa, 468, 92 N. W. 663, 96 Am. St. Rep. 394; *James* v. *Newman*, 147 Iowa, 574,

126 N. W. 781; *Knickerbocker Trust Co.* v. *Penn. Cordage Co.*, 65 N. J. Eq. 181, 55 A. 231; *Pringle* v. *Dunn,* 37 Wis. 449, 19 Am. Rep. 772; *Gordon* v. *Constantine Hydraulic Co.,* 117 Mich. 620, 76 N. W. 142; *Sawyer* v. *Adams,* 8 Vt. 172, 30 Am. Dec. 459.

Warvelle on Abstracts, § 68, also is cited as holding that "an index" is no part of recording acts. Some indices may not be, depending upon statutes with respect thereto. But how about "an abstract record" required to be kept by the recorder which, among other things, "shall show by tracts every conveyance or incumbrance recorded" and "a true chain of title to each tract and the incumbrances thereon?" In section 67 and 81 the author discusses the subject of a "tract index," here our "abstract record," the purpose and necessity thereof, and which the author calls an "indispensable adjunct," and says is "the source from whence the examiner draws all his primary information in preparing the abstract" and "is arranged with sole reference to the land in the county, by sections, or parts of sections in case of unsubdivided lands, and by lots, blocks or subdivisions in respect to such as have been resurveyed and platted."

The cited cases of *Sinclair* v. *Gunzenhauser,* 179 Ind. 78, 98 N. E. 37, 100 N. E. 376 and *Seat* v. *Louisville & Jefferson County Land Co.,* 219 Ky. 418, 293 S. W. 986, do not, as I think, support the proposition to the extent to which the cases are cited. 23 R. C. L. 190, also is cited. The author there says that courts are in agreement as to the utility and practical necessity for "an index" to public records. He says that in most, if not in all, jurisdictions, there are statutes requiring a recorder to keep "an index." He also says that there is a sharp conflict, due in a great measure to the difference in the statutes in the several jurisdictions, in determining whether "an index" is necessary to complete the record so as to make it constructive notice. Then on page 191 the author says that "under statutes which designate the particular steps in the act of making a record, and require that all instruments shall be duly indexed in a book

to be kept for that purpose, and that the index shall be made up in a certain manner, it is held that the record is not complete, so as to give notice, if the index is not properly made." He further says: "And indeed to hold that an index is not essentially part of a valid and complete registration would overlook the uniform practice of relying wholly on it to find the names of the various owners in tracing titles, and would also ignore the fundamental design of the recording acts, which is to give certainty and security to titles, by requiring all deeds and all liens to be made matters of public record, and thus discoverable by all persons who are interested in ascertaining their existence, and who will examine the records in the mode which the law has pointed out." And on page 193 he further says that "an index entry of a deed describing the land conveyed as in a different section, township and range from those of the deed, and containing the words 'for description, see record,' is not constructive notice of such deed to a subsequent purchaser." He further says that in some jurisdictions there must not only be a name index but also a "tract index," which gives to the investigator of a title a double check or protection against prior liens.

Cases are cited by the author supporting the propositions stated in the text. Under statutes similar to ours, I think the weight of judicial authority is that indices and abstract records required to be kept and entries to be made therein by the recorder, as required by the statute, are parts of the recording act, especially the "abstract record." *Ritchie* v. *Griffiths,* 1 Wash. 429, 25 P. 341, 12 L. R. A. 384, 22 Am. St. Rep. 155; *Bernard* v. *Benson,* 58 Wash. 191, 108 P. 439, 137 Am. St. Rep. 1051; *Barney* v. *McCarty,* 15 Iowa, 510, 83 Am. Dec. 427; *Koch* v. *West,* 118 Iowa 468, 92 N. W. 663, 96 Am. St. Rep. 394; *James* v. *Newman,* 147 Iowa, 574, 126 N. W. 781; *Pringle* v. *Dunn,* 37 Wis. 449, 19 Am. Rep. 772; *Hall* v. *Baker,* 74 Wis. 118, 42 N. W. 104; *Lander* v. *Bromley,* 79 Wis. 372, 48 N. W. 594; *Bardon* v. *Land, etc., Imp. Co.,* 157 U. S. 327, 15 S. Ct. 650, 39 L. Ed.

719; *Ely* v. *Norman,* 175 N. C. 294, 95 S. E. 543; *Fowle & Son* v. *Ham,* 176 N. C. 12, 96 S. E. 639; *Speer* v. *Evans,* 47 Pa. 141; *Prouty* v. *Marshall,* 225 Pa. 570, 74 A. 550, 25 L. R. A. (N. S.) 1211.

While in the prevailing opinion it is stated that the authorities on the subject are in conflict (which I concede, but due largely to differences in statutes in the several jurisdictions), and that the weight of authority is that "an index" is not a part of recording acts, nevertheless it further is considered that it is not necessary to now determine the question, and the case ruled on the theory that sufficient was made to appear on the indices and abstract record to impart constructive notice that the trust deed conveyed or charged the lands in question. In considering and in determining that, I again think it important to consider whether, under our statute, indices and an abstract record are or are not a part of our recording acts, the use and necessity of them, and what reliance and dependability may be given them. If they be regarded as mere facilities and conveniences in searching record titles, but not as being dependable nor to be relied on, that is one thing. If, on the other hand, they are to be regarded as a part of our recording acts, and may be relied on, then that is another thing. To assert the former and not the latter proposition does not, as I think, reflect the true intent and purpose of the statute. If sufficient was made to appear by the entries in the indices and in the abstract record to impart notice that the trust deed conveyed or charged the lands in controversy, then I see no necessity of considering or discussing questions of defaults or negligence of the recorder, nor as to his duty to comply with the statute in making full and proper entries in the indices and in the abstract record as required by the statute. I, of course, readily concede the proposition that, if from the entries appearing in the indices and in the abstract record it is disclosed that the trust deed conveyed or charged the lands in question, and thus affected the record title of the Livingstons with respect

thereto, and whose record title was being investigated, or that such facts were disclosed by the entries as made that one, examining such record title as to the lands in question with reasonable diligence, ought to have discovered that the trust deed did affect the lands in question, then sufficient was made to appear to impart constructive notice. But what was disclosed by such entries? As to that, I take, as we all are required to take, the findings of the trial court. We are not permitted to enlarge upon them or read anything into them. The court found in express language the kind of entry as made in the "entry book." Not anything is there made to appear what lands, or that the lands in question, were conveyed or charged by the trust deed. The court found that the entry book contained no description or reference to the property covered by the trust deed. Then the court found that the trust deed "was at the same time indexed in the general indices of grantors, grantees, mortgagors and mortgagees of the records of said county recorder's office, but without any description of the property covered by said deed being entered in said indices or any of them except for the words 'see record for description.'" Other than that, the finding does not show how the trust deed was indexed. Nor is it found that it was indexed so as to show where or in what book the trust deed was recorded. It is found that it was indexed "at the same time" it was entered in the entry book. The recorder was required to enter the trust deed in the entry book "immediately upon receipt of" it, and of necessity before it was spread on the record or transcribed in a book kept for that purpose. If, so found by the court, the recorder indexed the trust deed "at the same time" that he entered it in the entry book, it follows that the deed also was indexed before it was transcribed in a book kept for that purpose, and hence, when it was indexed, no notation in the indices was or could have been made of the book and page where the deed was recorded. Thus, from the finding, I think it clear that the recorder entered the trust deed in the general in-

dices at the same time and in the same manner he entered it in the entry book and before the deed was spread or transcribed on the record or in a book kept for that purpose. While a finding is made that the deed was copied at length in Book E of Mortgages at pages 351 to 359, yet it is not found that any entry was made in the general indices showing in what book or at what page the deed was copied or spread on the record. Hence the statement in the prevailing opinion that the book and page in which the trust deed was transcribed was shown by entries in the general indices is not borne out by the findings. True, the appellant in his brief in effect asserts that the book and pages in which the deed was transcribed were indicated by entries in the general indices. But we as to the facts are required to look to the findings and not to assertions of counsel except as supported by the findings.

I now come to how the matter was exhibited in the abstract record. Here we again must look to the findings. As to that the court found "that the said trust deed was at the same time (at the time it was entered in the entry book and in the general indices) abstracted as to all of the lands described in it except that parcel hereinbefore particularly described (the lands in Section 17 and in controversy) which said parcel was omitted from the said abstract on the said county recorder's records." How was it there abstracted, except as to the description of the lands and omitting a description of or any reference to the land in question? When it is found that the deed was abstracted in the abstract record "at the same time" it was entered in the entry book, it again follows that it was abstracted before the deed was transcribed in a book kept for that purpose, and hence no notation was or could have been made in the abstract record as to the book or page where the trust deed was recorded. From the findings I think it may not be inferred or implied that the book or pages where the trust deed was recorded were noted either in the indices or in the abstract record. So regarding the findings I do not see

anything which would put one searching the record title of the Livingstons on notice that the trust deed covered lands other than, or different from, those as disclosed by the abstract record.

Though it be assumed, as asserted by the appellant in his brief and as stated in the prevailing opinion, that in the abstract record the book and page where the trust deed was recorded was noted, yet how should the matter be regarded from such viewpoint? The consideration of it still involves the question of whether the abstract record is or is not a part of our recording acts, the purpose and necessity of it, and the reliance to be put upon it. The abstract record which the recorder is required to keep is something more than a mere index. It is a kind of record which, among other things, says the statute, "shall show by tracts every conveyance or incumbrance recorded," and "shall be so kept as to show a true chain of title to each tract and the incumbrance thereon as shown by the records" of the recorder's office. The distinction between a mere "index" and a "tract record" or "tract book," here our "abstract record," as has been seen, is pointed out by Warvelle. The obvious purpose of the Legislature requiring the recorder to keep an abstract record showing by tracts every conveyance or incumbrance recorded and a true chain of title to each tract as to the incumbrances thereon was, among other things, to save examiners of title to any particular tract the necessity of running down every instrument indicated on the record as having been executed or given by the person whose title to the particular tract is being investigated, irrespective of whether the instrument or instruments refer to or affect title to the particular tract the title to which is under investigation, or of examining records of transcribed instruments in the recorder's office irrespective of whether they do or do not involve the title under investigation. The appellant in his brief concedes, and says: "It is true abstracters in Utah rely to a large extent upon the 'abstract record' in the recorder's office." I think they have the right to do so.

Warvelle, § 81, says: "The tract index occupies much the same position in the abstract office that the great ledger does in the counting room. It is the receptacle for all the notes of the entry books, where the great mass of each day's transactions is separated, classified and arranged, and exhibits at a glance on its broad pages the balance sheet of all land titles of the county." The examiner turns to it as the foundation stone, and from it derives his primary information. He turns to the tract in which is embraced the lands the title to which is being investigated as "a true chain of title" and "the incumbrances thereon." There finding no conveyance or incumbrance affecting the title under investigation he may rightly assume there is none. To hold otherwise is, I think, to overlook the practice of relying on the abstract record and indices and to ignore the fundamental design of our recording acts.

Let it be assumed that an examiner is investigating the record title of another to a parcel of land, say in a particular section in the southern part of Salt Lake county. In the general indices and in the abstract record the examiner finds that the person whose title is being investigated had made conveyances of lands in a section or sections in the northern part of the county or of parcels in Salt Lake City, and which briefly are described in the abstract record without a description of any other lands or parcels or in any wise relating to or pertaining to the lands or the tract the record title of which is being searched and investigated. Is there in such case any good reason, either in fact or in law, that the examiner, nevertheless, is required to examine the recorded contents of all of such other transcribed conveyances or incumbrances to ascertain if by chance any of them—they may be numerous, hundreds of them—may or may not convey or charge the lands the title to which is being investigated? I think not. If the examiner is required to do that and may not rely on the abstract record, then equally well is he required to examine and inspect every instrument transcribed on the records to

ascertain if it affects the title to lands under investigation. Here the examiner, in investigating the record title of the Livingstons and as to their right to convey the parcel of land in section 17, finds by examining the abstract record that the Livingstons theretofore had given a trust deed to lands described in other sections of the county, and which deed, as there noted, in no way affected or involved the title to the parcel of land the title of which was being investigated. Under such circumstances I see no good reason, either in law or in fact, why the examiner was required to inspect or examine the trust deed as transcribed on the records to ascertain if the description of the lands conveyed or charged by it was or was not properly entered in the abstract record, or as to whether or not the trust deed differently from the description as contained in the abstract record included lands in section 17, any more than, if it had been indicated on the abstract record that the Livingstons had conveyed parcels of land in Fillmore or in Delta in Millard county, the examiner was required to inspect such conveyances to ascertain if any of them did or did not also include the lands in question, though on the abstract record there was not anything to indicate that such lands were affected by such conveyances. If due care or diligence requires that, and does not permit reliance on the abstract record and indices as by the mandatory provisions of the statute required to be kept, then they, instead of being aids and facilities in searching record titles, become a mere delusion and a snare and a ready vehicle to mislead and deceive.

Stress, however, is put on the notation in the indices "see record for description" as being sufficient information to put the examiner on inquiry that the trust deed did convey or charge, or may have conveyed or charged, or in some manner affected, the lands in section 17, the title of which was being investigated; which, had it been followed up and the trust deed as transcribed on the record inspected, would have disclosed that it included the lands in section 17. As

is seen, under the statute, the recorder in the indices, among other things, was required to show the book and page in which the instrument is recorded and a "brief description of the property charged" by it. The court found no kind of a description was given in the indices except "see record for description." While the court found that the deed was indexed in the general indices, yet did not find that it was properly indexed, or how it was indexed, or that it was indexed as by the statute required, except the finding that no description of the property was given. Nevertheless it is now assumed that the book and pages in which the deed was transcribed were given or noted in the indices. As already indicated, if as found by the court, the deed was indexed in the general indices "at the same time" it was entered in the entry or reception book, it was indexed before it was transcribed on the record. To uphold a judgment, inferences or assumptions in support of it are sometimes indulged. But they are not indulged to throw down or reverse a judgment. That is especially true in considering findings when unassailed and unchallenged. In such view the notation is of little, if of any, significance.

In the next place, though in the general indices the book and pages where the deed was transcribed were noted, but without in any manner indicating or even suggesting that the deed in any particular affected the lands, the title to which was being investigated, how would such a notation reasonably or fairly put one examining the title on notice or inquiry that the deed did or might affect such lands? That but brings us back to the proposition that one examining the record title to a particular parcel of land or tract, finding on the indices a conveyance or conveyances by those whose title is being investigated of lands which, as disclosed by the indices and by the abstract record, in no particular pertain or relate to the lands the title of which is being investigated, must, nevertheless, inspect such instruments or conveyances and ascertain if they do or do not affect such lands. I think he is not either as matter of

fact; nor especially as matter of law as in the prevailing opinion held, required to do so. Besides, the notation may as well lead the examiner to the "abstract record" where the property of the trust deed is so described as not to include or affect lands in section 17 the title of which was being investigated, and, finding such to be the fact, the examiner may have considered it unnecessary to look elsewhere. In view of that I am not as matter of law prepared to say he was required to do so whatever may be said of it as a matter of fact. The holding that sufficient was made to appear on the indices to constitute constructive notice of the contents of the trust deed and that it affected the lands in question, in effect, relieves the recorder of legal liability and casts it on the abstract company who failed to discover and report to those employing it that the trust deed affected the lands and the title thereto in controversy.

I think the judgment of the court below should be affirmed.

ELIAS HANSEN, J.

I concur in the views expressed by Mr. Justice STRAUP in his dissenting opinion.